IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KIMBERLY FARLEY, CHAD FORRESTER, and KIMBERLY SANDVIG, on behalf of themselves and others similarly situated, | ) ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:22-CV-468 |
| | ) | |
| EYE CARE LEADERS HOLDINGS, LLC, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

The plaintiffs are patients of ophthalmology practices that had contracts with the defendant Eye Care Leaders Holdings, LLC ("ECL") to manage patient data. On behalf of a class of patients, the plaintiffs contend they were injured by a data breach and series of ransomware attacks that shut down ECL's software platforms, thus exposing personal patient data to wrongdoers. Other cases with similar claims by patients were filed and consolidated. ECL also faces a class action suit brought by ophthalmology practices. After significant litigation of preliminary issues and discovery, the parties have reached a settlement agreement, subject to Court approval.

The Court has reviewed the parties' Joint Motion for Preliminary Certification of Settlement Class and Preliminary Approval of Class Action Settlement, Doc. 66, the memorandum of law in support thereof, Doc. 67, and the proposed Class Action Settlement Agreement. Doc. 67-1. The Court also conducted a hearing on August 16,

2023, to address certain questions related to the Settlement Agreement. Minute Entry 08/16/2023. Based on this review and the findings below, made for purposes of this Order only, there is good cause to grant the motion.

## I. Overview

After receiving notice from their eye care clinics that their personal information had been implicated in a data breach, the plaintiffs Kimberly Farley, Chad Forrester, and Kimberly Sandvig began to worry about identity theft. Mr. Forrester was soon the victim of a credit card fraud scheme, and Ms. Sandvig's credit score fluctuated dramatically despite no changes in her financial behavior. Believing these and other occurrences to be associated with the breach, the plaintiffs filed suit against defendant ECL, the entity that provides medical records platforms and patient management software to the plaintiffs' eye care clinics and whose data system was breached. In a consolidated class action complaint,[1] the plaintiffs brought claims for negligence, negligence per se, invasion of privacy, unjust enrichment, and breach of fiduciary duty. Doc. 31 at 34–45.[2] ECL's motion to dismiss was denied, Doc. 46, and discovery began. *See, e.g.*, Doc. 48.

ECL and related entities are also facing a separate lawsuit in this district brought by some of the ophthalmology practices with which it had contracts, again as a proposed class action. Complaint, *Alliance Ophthalmology, PLLC et al. v. ECL Group, LLC*, No.

---

[1] The plaintiffs each originally brought separate lawsuits against ECL. The cases were consolidated for pre-trial purposes, *see* Doc. 23, and together the plaintiffs filed an amended consolidated class action complaint. Doc. 31.

[2] All citations are to the docket of *Farley v. Eye Care Leaders Holdings, LLC*, No. 22-CV-468, unless otherwise noted.

22-CV-296, Doc. 1 (M.D.N.C. Apr. 15, 2022). These plaintiffs filed suit against ECL for breach of contract, based largely on an alleged failure to keep patient data secure and to provide discounts when the platform was offline, as well as for fraud and unfair trade practices based on alleged misrepresentations by ECL about the ransomware attacks. *Id.* at 1−2 (summarizing allegations and claims). ECL's motion to dismiss was denied. *Id.* at Doc. 30. Additional plaintiffs and defendants were later added in a second amended complaint. *Id.* at Doc. 35.

Because the defendants have significant large-scale financial obligations to others not involved in this litigation and because discovery was likely to be expensive, informal discovery and settlement discussions began soon after the denials of the motions to dismiss. Doc. 53; Doc. 60; Doc. 67 at 16−18. Due to the complications arising from those obligations, discussed in more detail *infra* at 7–8, the parties sought assistance, *see* Doc. 53, and a mediated settlement conference was held with Magistrate Judge L. Patrick Auld. *See* Text Order 03/22/2023; Minute Entry 04/10/2023. The parties reached a framework for agreement, Minute Entry 04/10/2023, and all cases were consolidated for settlement purposes. Doc. 61. The parties have since finalized the proposed settlement. Doc. 67-1.

The parties propose the certification of two settlement classes: (1) a "Physician Settlement Class" including all ophthalmology practices that licensed the defendants' electronic medical records (EMR) and billing software during the outages caused by the ransomware attacks, and (2) a "Patient Settlement Class" including all patients whose personal information was exposed during the data breaches that resulted from those

attacks. Doc. 67 at 2. All the defendants' assets are tied up in state court receivership actions, and the parties propose to fund the settlement with proceeds of insurance policies issued to ECL by Hiscox and by Traveler's. *Id.* at 3, 17–18; Doc. 67-10 at ¶¶ 8–9. Because of the limited funds, the parties propose certification of mandatory classes with no opting-out allowed. *Id.* at 18–19. The Settlement provides for the creation of a $1,460,449.50 settlement fund for the Physician Settlement Class and a $2,616,783 settlement fund for the Patient Settlement Class. *Id.* at 19. This comprises the entirety of the now-available insurance funds. *Id.* The defendants will also assign rights under other disputed insurance policies to the Physician Settlement Class. *Id.* at 20.

In broad terms, the settlement calls for named plaintiffs in both classes to receive specified class service awards, attorneys' fees to be limited to a set percentage, subject to court approval, and any remaining funds to be distributed equally to valid claimants. *Id.* at 21; *see* Doc. 67-1 at 16. For the Patient Settlement Class only, members who submit a valid claim for out-of-pocket expenses up to $5,000, as determined by the Claims Administrator, will be reimbursed before the remainder of the Patient Settlement Fund is distributed equally to valid claimants. Doc. 67-1 at 16. The Patient Settlement Class agrees to release its claims against the Physician Settlement Class in exchange for the Physician Settlement Class accepting a smaller settlement fund. Doc. 67 at 19−20. The defendants also agree to assign two other potential sources of insurance coverage to the Physician Settlement Class, and if any insurance funds are obtained under these policies, 67% of the funds will be contributed to the Physician Settlement Fund to be distributed equally to valid claimants, with the remaining funds being paid to counsel for the

4

Physician Settlement Class, subject to court approval. *Id.* at 20. The defendants also agree to provide account credits to certain members of the Physician Settlement Class, to cease collection efforts related to unpaid invoices for periods with service interruption, and to allow members of the Physician Settlement Class to terminate contracts without penalty and with data provided in a useable format. *Id.*

There is a "strong presumption in favor of voluntary settlement agreements," which is "especially strong in class actions and other complex cases because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) (en banc) (cleaned up) (affirming certification of two nationwide antitrust settlement classes). But courts serve as fiduciaries for class members, *see Sharp Farms v. Speaks*, 917 F.3d 276, 293–94 (4th Cir. 2019), and proposed class action settlements require close court oversight and approval to ensure fairness, reasonableness, and adequacy. FED. R. CIV. P. 23(e); *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 521, 525 (4th Cir. 2022).

The pending motion requires two broad inquiries. First, is preliminary certification of mandatory settlement classes appropriate? Second, if so, is the proposed settlement likely to receive final court approval so that notice to the class is appropriate?

## II.    Preliminary Certification of the Settlement Classes

When a settlement is reached before Rule 23 certification, a class may be certified solely for the purposes of settlement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

5

620 (1997); *see also Covarrubias v. Capt. Charlie's Seafood, Inc.*, No. 10-CV-10, 2011 WL 2690531, at *2 (E.D.N.C. July 6, 2011); Fed. R. Civ. P. 23(e)(1)(B)(ii).

The parties propose certification under Federal Rule of Civil Procedure 23(b)(1)(B), which provides for the certification of a mandatory class when there is a "limited fund" and insufficient resources to satisfy the claims of all the members of the proposed class. *See Herrera v. Charlotte Sch. of Law, LLC*, 818 F. App'x 165, 172 (4th Cir. 2020); *see also* Fed. R. Civ. P. 23(b)(1)(B) (authorizing certification where "prosecuting separate actions by . . . individual class members would create a risk of" judgments "that, as a practical matter, would be dispositive of the interests of the other members" of the proposed class).

The Supreme Court has held that in addition to demonstrating insufficiency of funds, it is "presumptively necessary, and not merely sufficient" for the district court to find that: (1) "the class as a whole was given the best deal, and that the limited fund did not give a defendant a better deal than *seriatim* litigation" and (2) "the class will comprise of everyone who might state a claim on a single or repeated set of facts, invoking a common theory of recovery, to be satisfied from the limited fund as the source of payment." *Herrera,* 818 F. App'x at 172–73 (cleaned up) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)).

Finally, the Court must determine whether the four threshold requirements of the Federal Rules of Civil Procedure are met. Those requirements are: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are

6

typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a).

## A. The Limited Fund

The Federal Rules of Civil Procedure "provide[] for certification of a class whose members have no right to withdraw, when 'the prosecution of separate actions . . . would create a risk' of 'adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." *See Ortiz*, 527 U.S. at 833 (quoting FED. R. CIV. P. 23(b)(1)(B)). If there are only limited funds available to satisfy claims and those funds are insufficient to satisfy all those claims, a mandatory class can be appropriate if certain conditions are met: 1) "the totals of the aggregated liquidated claims and the fund available for satisfying them, set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims;" 2) "the whole of the inadequate fund was to be devoted to the overwhelming claims;" and 3) "the claimants identified by a common theory of recovery were treated equitably among themselves." *Ortiz*, 527 U.S. at 838−39.

The defendants here are caught up in the legal difficulties of Greg Lindberg. He and his businesses have faced or are facing multiple civil lawsuits in this district,[3] and

---

[3] *United States v. Lindberg*, No. 22-CV-911 (M.D.N.C.) (dismissed); *Global Growth, LLC v. Causey*, No. 20-CV-248, Doc. 38, 2021 WL 111494 (M.D.N.C. Jan. 12, 2021); *Universal Life Ins. Co. v. Lindberg*, No. 20-CV-681 (M.D.N.C.); *Local Web Results, Series LLC v. Eli Global, LLC et al.*, No. 21-CV-206 (M.D.N.C.); *Jordan et al. v. Lindberg*, No. 22-CV-483 (M.D.N.C.); *United States Sec. & Exchange Commission v. Lindberg et al.*, 22-CV-715 (M.D.N.C.).

Mr. Lindberg also faces criminal proceedings in the Western District of North Carolina on charges that he attempted to bribe the Commissioner of Insurance. *See United States v. Lindberg*, 476 F. Supp. 3d 240 (W.D.N.C. 2020); *United States v. Lindberg*, 39 F.4th 151 (4th Cir. 2022).

Mr. Lindberg allegedly funded the operations of the defendants here and other businesses using assets that belonged to several insurance companies once owned and operated by Mr. Lindberg. *See generally* Doc. 67-3 at 39; Doc. 67-4 at ¶¶ 18, 23–25. Those insurance companies are now subject to rehabilitation proceedings in North Carolina State Court, *see generally* Doc. 67-10 at ¶ 4, and, as a result of orders issued in those proceedings, the defendants must use all available resources to repay the insurance companies approximately $1.275 billion. *Id.* Because of the state court judgment, the defendants cannot liquidate any assets or use their assets to satisfy any claims by the plaintiffs in this litigation. *Id.* at ¶ 6.

This effectively means that the only assets available to pay the settlement classes' claims are the proceeds of several insurance policies purchased by the defendants. There are four such policies, two of which have been tendered. *Id.* at ¶¶ 7–9. Both of these policies are subject to wasting clauses, which means that the amounts available to satisfy the claims of the plaintiffs and others affected by the data breach would be reduced by litigation expenses. *Id.* at ¶¶ 8–9. There are two other policies, but both those insurers have so far denied coverage. *Id.* at ¶¶ 10–11.

The two groups of plaintiffs have experienced counsel who are well-versed in complex class action litigation. Doc. 67-12 at ¶¶ 1–7; Doc. 67-13 at ¶¶ 1–7. The

8

defendants have provided financial records to plaintiffs' counsel confirming the lack of assets to satisfy their liabilities, Doc. 67-10 at ¶ 16, and the settlement agreement requires them to provide current documentation confirming it. Doc. 67-1 at § 9.1. Counsel for the patient-plaintiffs in *Farley* and the physician-plaintiffs in *Alliance* have each independently evaluated the availability of other assets and have satisfied themselves that the insurance proceeds are the only hard assets from which any judgment could be satisfied. Doc. 67-12 at ¶ 21; Doc. 67-13 at ¶¶ 11, 13.

The claims of the physician-plaintiffs alone, conservatively estimated, would exceed the entirety of the tendered insurance proceeds. Doc. 67 at 6–7.[4] There are likely some three million members of the patient class, and even nominal damages of $1 would thus exceed $3 million. *Id.* at 8–9.

The class members are treated equitably among themselves under the settlement, as discussed in more detail *infra* at 10–12. The settlement classes are clearly defined. Doc. 67-1 at § 2.37. At least one court has approved rule 23(b)(1)(B) mandatory classes in cases where the only available assets are insurance policies. *Herrera*, 818 F. App'x at 171–72 (affirming limited fund settlement where remaining insurance policies, with the exception of $150,000, represented the defendant's only appreciable asset).

---

[4] Counsel are officers of the court and in their joint brief represent that aggregate damages for contractual refunds to the physician class members would be at least $5.3 million. Doc. 67 at 6–7. The physicians also have claims for lost revenue, which plaintiffs estimate at approximately $9000 per day per physician. *Id.* at 31–32. Even at a small percentage of that rate, the damages would be in the many millions. *Id.* at 31–32 & n.8−n. 10. The two tendered policies total approximately $4.01 million. Doc. 67-10 at ¶¶ 8–9. If full coverage were obtained under the other two policies, an additional $9 million would be available. The insureds under those other two policies are defendants only in the *Alliance* case brought by the ophthalmology groups. *See* Doc. 67-1 at §§ 3.3–3.4

**B.    Numerosity**

To meet the numerosity requirement, there must be a large enough group of plaintiffs to make joinder of all class members impracticable. *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 183, 186 (4th Cir. 1993) (affirming district court's decision that a class of 480 members "would easily satisfy the numerosity requirement"); *see also In re Outer Banks Power Outage Litig.*, No. 17-CV-141, 2018 WL 2050141, at *4 (E.D.N.C. May 2, 2018) (class consisting of between 1,775 and 2,800 properties and businesses satisfied numerosity requirement). The proposed classes easily meet this requirement. According to ECL's records, there are approximately 6,133 practices in the Physician Settlement Class. Doc. 67-10 at ¶ 15. The Patient Settlement Class, which is comprised of the practices' patients, has been estimated at approximately three million. *See* Doc. 31 at ¶ 2; Doc. 67 at 8 n.4. The parties' proposed settlement classes easily satisfy the numerosity requirement.

**C.    Commonality and Typicality**

Plaintiffs' claims all arise out of the defendants' alleged failure to secure against, mitigate, and provide timely notice of the same data breaches. They raise common questions of law and fact.

The Physician Settlement Class's breach of contract claims rest on provisions that were common to all the defendants' licensing agreements. Second Amended Class Action Complaint, *All. Ophthalmology*, No. 22-CV-296, Doc. 35 at ¶¶ 25, 39 (M.D.N.C. May 1, 2023). Among the named physician-group plaintiffs, there is at least one practice that purchased each of the defendant's EMR and revenue-cycle management products at

issue. Likewise, the Physician Settlement Class's claims for negligence, breach of contract, fraud, and unfair trade practices all turn on conduct that was common to the proposed class—*i.e.*, that the defendants failed to secure against the ransomware attacks and, once those attacks occurred, falsely represented that the outages were the result of mere technical issues and failed to timely notify the practices affected by the ransomware attacks. *Id.* at ¶¶ 132, 137–147, 156–210.

The Patient Settlement Class's claims for negligence, invasion of privacy, unjust enrichment, and breach of fiduciary duty likewise seek to recover for damages resulting from the same alleged conduct. Doc. 31 at ¶¶ 126–189. There are myriad common questions of law and fact about the Patient Settlement Class, such as whether ECL owed a duty to protect and secure the Private Information of the patients, whether ECL breached that duty, whether ECL maintained reasonable security procedures and practices appropriate to the nature of storing the Private Information of patients, and whether patients have actionable claims against ECL. These common questions of law and fact arise from the same data breaches.

### D. Adequacy

Federal Rule of Civil Procedure 23(a)(4) requires that class representatives fairly and adequately represent the interests of the class. Settling plaintiffs must show that: (1) class representatives have no actual or potential conflicts of interest with the putative class and "possess the same interest and suffer the same injury as the class members"; and (2) plaintiffs' counsel is "qualified, experienced and generally able to conduct the proposed litigation." *Rehberg v. Flowers Baking Co. of Jamestown, LLC*, No. 12-CV-

11

596, 2015 WL 1346125, at *11 (W.D.N.C. Mar. 24, 2015) (cleaned up); *see also In re Outer Banks*, 2018 WL 2050141, at *4. Here, the plaintiffs satisfy both requirements.

First, there does not appear to be a meaningful actual or potential conflict of interest between the named plaintiffs and putative class members. The named plaintiffs for both settlement classes are members of the class and sub-classes (iMedicWare Class, myCare Integrity Class, MVE Class, and Revenue Cycle Management Class) they seek to represent, possess the same interests as the class, and allege that they suffered the same injury as the class members as a result of the same alleged conduct. *See Amchem*, 521 U.S. at 625–26.

Second, the representatives are adequate. Plaintiffs' counsel for both groups of plaintiffs are experienced and able to conduct the proposed litigation. The Court has already appointed interim class counsel for the Patient Settlement Class in the consolidated *Farley* matter. Doc. 24. Combined, the class counsel have extensive experience in consumer protection and complex litigation, including substantial experience in class actions. Doc. 67-12 at ¶¶ 2–7; Doc. 67-13 at ¶¶ 3–6. The named plaintiffs and counsel have zealously and ably represented the interest of the plaintiffs and the individuals they wish to represent, and if this Settlement is approved, they will zealously and ably represent the interests of the Settlement Classes.

## III.    Preliminary Approval of Proposed Settlement

### A.    Discussion

"It has long been clear that the law favors settlement." *United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992). This is particularly true in class actions.

12

*In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"); *Reed v. Big Water Resort, LLC*, No. 14-CV-1583, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016) (quoting same); WILLIAM B. RUBENSTEIN, 4 NEWBERG & RUBENSTEIN ON CLASS ACTIONS § 13.44, n.1 (6th ed. 2022) (collecting cases).

At this initial stage of settlement review, courts should determine whether notice of the proposal to the Class "is justified by the parties' showing that the court will likely be able to:  (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B).  The 2018 amendments to Rule 23(e) make clear that the same factors which govern final approval under Rule 23(e)(2) also guide preliminary approval.

Courts may approve a class settlement only if it is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).  "In applying this standard, the Fourth Circuit has bifurcated the analysis into consideration of fairness, which focuses on whether the proposed settlement was negotiated at arm's length, and adequacy, which focuses on whether the consideration provided the class members is sufficient." *Roldan v. Bland Landscaping Co.*, No. 20-CV-276, 2022 WL 17824035, at *2 (W.D.N.C. Dec. 19, 2022) (cleaned up); *see also Beaulieu v. EQ Indus. Servs., Inc.*, No. 6-CV-400, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991)).  The Court acts as a fiduciary of the class members. *See Sharp Farms*, 917 F.3d at 293–94; *1988 Tr.*, 28 F.4th at 521, 525.

## B.    Fairness

The fairness analysis aims "to ensure that a settlement is reached as a result of good-faith bargaining at arm's length, without collusion." *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (cleaned up).  Courts apply a four-factor test to determine the fairness of a proposed settlement:  "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of [law at issue]."  *In re Jiffy Lube*, 927 F.2d at 158–159; *see also 1988 Tr.*, 28 F.4th at 525 (applying the same standard).

All four fairness factors support preliminary approval.  The plaintiffs initiated the litigation more than a year ago, and while the parties worked cooperatively, the record indicates that they negotiated at arm's length, including through a magistrate judge mediator.  *See* Text Order 03/22/2023; Minute Entry 04/10/2023.  Due to the limited funds available to facilitate settlement and the cost of litigation and discovery, which would reduce those limited funds further, the parties entered mediation and settlement negotiations quickly after the Court denied the motions to dismiss.  *See* Doc. 53; Doc. 60; Doc. 67 at 16.  The parties reached an agreement for a framework, Minute Entry 04/10/2023, and all cases were consolidated for settlement purposes.  Doc. 61.  There is no indication of any collusion or improper conduct.

The plaintiffs' counsel representing the Patient Settlement and Physician Settlement Classes have extensive experience in class action litigation.  Doc. 67-12 at ¶¶ 2–7; Doc. 67-13 at ¶¶ 3–6.  Patient Settlement Class lead counsel has more than two

14

decades of experience practicing complex litigation, including consumer class actions, and together the counsel team has notable experience in class actions involving data breach litigation. Doc. 67-12 at ¶¶ 2–7. Physician Settlement Class counsel have more than 35 years of combined experience in business and complex litigation, including class actions involving medical record data. Doc. 67-13 at ¶¶ 3–6; *id*. at 17.

The parties did not engage in formal written discovery or depositions but worked cooperatively to ask the Court to extend the discovery deadline and to conduct informal discovery to facilitate settlement negotiations. After the Court authorized discovery and set deadlines for it on February 3, 2023, Doc. 48, the parties promptly initiated settlement negotiations and filed a joint motion requesting a sixty-day stay of formal discovery deadlines to alleviate the need for the parties "to spend time and resources that will further diminish resources that would be better directed towards settlement efforts." Doc. 52 at 1–2. The Court granted the motion on March 22, 2023, pending mediation of the settlement by Magistrate Judge Auld. *See* Text Order 03/22/2023. In advance of the Judicial Settlement Conference, the parties engaged in informal discovery, and the defendants produced "copies of all potentially applicable insurance agreements" as well as "information about their assets and liabilities," which allowed the parties to submit "confidential settlement conference briefs in which they discussed both the strengths and weaknesses of their cases." Doc. 67 at 16, 39.

### C. Adequacy and Reasonableness

Courts assess the adequacy of a settlement through the following factors: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties

of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *In re Jiffy Lube*, 927 F.2d at 159; *see also 1988 Tr.*, 28 F.4th at 526 (applying the same factors). While typically the first two factors are the most important, *Sharp Farms*, 917 F.3d at 299, where the case involves a Rule 23(b)(1)(B) limited fund class certification, the dominant issues may instead be the expense of litigation and the likelihood of recovery. *See Herrera*, 818 F. App'x at 177. Lastly, in assessing reasonableness, the Court examines "the amount of the settlement" and "ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial." *1988 Tr.*, 28 F.4th at 527.

The relevant adequacy and reasonableness factors support preliminary approval. As discussed in detail, *supra* at 7–10, the solvency of the defendants and the likelihood of recovery are of central importance in this matter because state court judgments prevent the defendants from liquidating any assets or using their assets to satisfy any claims by the plaintiffs. Doc. 67-10 at ¶ 6. The only assets available to pay the settlement classes' claims are the proceeds of several insurance policies purchased by the defendants. Two have been tendered, and they total approximately four million dollars. *Id.* at ¶¶ 8−9. The fact that these policies are subject to wasting clauses, *see id.*, which means that the amounts available to satisfy the claims of the plaintiffs would be reduced by litigation expenses, also supports a finding of adequacy of a settlement that seeks to reduce litigation costs. This agreement has the support of both the Physician Settlement and

16

Patient Settlement Classes, and no parties have yet lodged any opposition to the arrangement. *See generally* Doc. 67. There is a potential for a larger recovery, but the plaintiffs acknowledge the risks of litigating these claims, especially given the developing law related to data breaches and class actions of such claims.

There is no apparent conflict between or among the settlement classes. There are different insurance policies with different coverage funding the settlements of the two classes, and the physician sub-classes are all treated equally.

Considering the limited funds available for settlements, the factors weigh in favor of finding that the settlement is adequate. The settlement is also reasonable because it conserves the limited resources from the insurance policies for the maximum benefit of the plaintiff classes.

## IV. Notice

To develop and finalize a Notice Plan, it is necessary that the defendants access the names and contact information of members of the Patient Settlement Class within their possession that they are otherwise restricted from accessing under the Health Insurance Portability and Accountability Act. It is also necessary that the defendants be able to disclose this information to the Settlement Administrator for the limited purpose of providing notice of the Settlement Agreement and verifying claims related to the Settlement Agreement.

It is **ORDERED** that:

1. **Preliminary Certification for Settlement Purposes.** For purposes of settlement, the Physician Settlement Class and Patient Settlement Class are preliminarily

certified as Rule 23(b)(1)(B) classes defined as follows:[5]

- "Patient Settlement Class" means all individuals residing in the United States whose Personally Identifiable Information or Protected Health Information was compromised in the Data Breaches affecting one or more Defendants, including all persons who received notice about the Data Breaches.

- "Physician Settlement Class" includes:

    o "iMedicWare Class," which means all persons and entities who contracted with one or more Defendants for EMR management services using the iMedicWare software, and who have suffered Outages for any period of time since January 1, 2019, due to ransomware attacks or any other reasons.

    o "myCare Integrity Class," which means all persons and entities who contracted with one or more Defendants—and received services from Integrity EMR, LLC and Integrity Holdings, LLC—for EMR management services using the myCare Integrity software, and who have suffered Outages for any period of time since January 1, 2019, due to ransomware attacks or any other reasons.

    o "MVE Class," which means all persons and entities who contracted with one or more Defendants for EMR management services using the MVE software, and who have suffered Outages for any period of time since

---

[5] Defendants' Counsel, officers and directors, and the undersigned Judge are excluded from the Classes.

18

January 1, 2019, due to ransomware attacks or any other reasons.

- o "Revenue Cycle Management Class," which means all persons and entities who contracted with one or more Defendants—and received services from Alta Billing, LLC and Alta Billing Holdings, LLC—for revenue cycle management services who have received delinquent revenue cycle services for any period of time since January 1, 2019 and/or whose transaction information was potentially compromised from ransomware attacks or any other reasons.

2. **Conditional Appointment of Class Representatives.** For settlement purposes, plaintiffs Kimberly Farley, Chad Forrester, and Kimberly Sandvig are conditionally certified as the Class Representatives of the Patient Settlement Class to implement the parties' settlement in accordance with the Settlement Agreement. For settlement purposes, plaintiffs Alliance Ophthalmology, PLLC, Dallas Retina Center, PLLC, Texas Eye and Cataract, PLLC, and Hofacre Optometric Corporation are conditionally certified as the Class Representatives of the Physician Settlement Class to implement the parties' settlement in accordance with the Settlement Agreement.

3. **Conditional Appointment of Class Counsel.** For settlement purposes, Jean Martin of Morgan & Morgan Complex Litigation Group, Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, and Gary E. Mason of Mason LLP are conditionally appointed as Settlement Class Counsel for the Patient Settlement Class, and Russ Ferguson, Matthew Tilley, and Patrick Spaugh of

19

Womble Bond Dickinson (US) LLP are conditionally appointed as Settlement Class Counsel for the Physician Settlement Class. Settlement Class Counsel **SHALL** assist in facilitating communications between the parties in accordance with the Settlement Agreement.

4. **Settlement Approval.** The Settlement Agreement is preliminarily approved.

5. **Claims Administrator.** Epiq Global is appointed as the Claims Administrator and is charged with the responsibility of implementing the Notice Plan and claims process as set forth in the Settlement Agreement.

6. **Class Notice.** The Court orders and compels the defendants to access the names and contact information of members of the Patient Settlement Class within their possession and to disclose same to Epiq Global for the limited purpose of providing notice of the Settlement Agreement and verifying claims related to the Settlement Agreement. The parties **SHALL** submit a Notice Plan to the Court no later than **September 5, 2023.** Upon approval of the Notice Plan, the Court will schedule the Fairness Hearing and establish deadlines for providing notice, objecting to the Settlement Agreement, filing a petition for a fee award, and filing briefs in support of final approval of the Settlement Agreement and certification.

7. **Termination.** If the Settlement Agreement terminates for any reason, (a) class certification for settlement purposes will be automatically vacated, (b) Representative Plaintiffs will revert to their prior status as non-settlement Class representatives, (c) Settlement Class Counsel will stop functioning as Settlement Class Counsel, and (d) the Consolidated Actions will revert to their previous status

20

in all respects as they existed immediately before the Parties executed the

Settlement Agreement.

**SO ORDERED,** this the 23rd day of August, 2023.


<u> </u>
UNITED STATES DISTRICT JUDGE