THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ALLIANCE OPHTHALMOLOGY, PLLC; DALLAS RETINA CENTER, PLLC; TEXAS EYE AND CATARACT, PLLC; AND HOFACRE OPTOMETRIC CORPORATION, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ECL GROUP, LLC; ECL HOLDINGS, LLC; EYE CARE LEADERS HOLDINGS, LLC; EYE CARE LEADERS PORTFOLIO HOLDINGS, LLC; INTEGRITY EMR, LLC; INTEGRITY EMR HOLDINGS, LLC; ALTA BILLING, LLC; AND ALTA BILLING HOLDINGS, LLC,<br><br>Defendants. | 1:22-CV-00296-LCB-JLW |
| KIMBERLY FARLEY, CHAD FORRESTER, AND KIMBERLY SANDVIG, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EYE CARE LEADERS HOLDINGS, LLC,<br><br>Defendant. | 1:22-CV-00468-CCE-JLW |

# MEMORANDUM IN SUPPORT OF JOINT MOTION TO GRANT FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF RULE 23(b)(1)(B) CLASS

In its prior review of the Settlement Agreement, the Court determined,

> Considering the limited funds available for settlements, the factors weigh in favor of finding that the settlement is adequate. The settlement is also reasonable because it conserves the limited resources from the insurance policies for the maximum benefit of the plaintiff classes.

(Doc. 71 at 17). This determination remains true today.

Since the Court's Order preliminarily approving the Settlement Agreement and certifying the Physician Settlement Class and Patient Settlement Class for purposes of settlement, (Doc. 71), the Settlement Administrator has completed the notice plan, (Doc. 83), *no objections* have been submitted, and the need for the limited fund settlement under Rule 23(b)(1)(B) became all the more clear in light of Defendants' filing for bankruptcy. The only funds available from the Defendants to pay for the losses to the class come from the Defendants' insurance policies, which would be eroded by further litigation expenses.

Because the Settlement Agreement and class certification satisfy Rule 23, the Court should grant final approval of the Settlement Agreement and certify the classes.

## FACTUAL BACKGROUND

As discussed in the Memorandum in Support of Joint Motion for Approval of Settlement Class and Preliminary Approval of Class Action Settlement, (Doc. 67), which is incorporated herein, and as set forth in the Court's Order granting preliminary approval, (Doc. 71), this matter arises from a series of data breaches from 2019 to 2021 that impacted

ophthalmology and optometry practices across the country and potentially exposed their patients' personal data. Defendants provided a variety of Electronic Medical Record ("EMR") and billing services to the Physician Settlement Class, who licensed Defendants' products during the period at issue, while the Patient Settlement Class constitutes the patients whose personal information was potentially exposed by the data breaches.

Years ago, several insurance companies once owned and operated by Greg E. Lindberg, now in rehabilitation and/or liquidation proceedings in North Carolina state court, used their liquid assets to invest in non-insurance businesses like Defendants. (Doc. 67 at 13). As a result, by contract and a variety of court orders (e.g., Doc. 67-5), proceeds from Defendants' business operations must be used to repay the insurance companies. Thus, the only monetary benefits available to the classes stemmed from insurance proceeds or contractual credits. As for the insurance proceeds, they come from "eroding" or "wasting" policies, meaning their value is reduced as Defendants incur legal fees. (Doc. 67-10).

For these reasons, the classes' alleged damages dwarf the funds available to pay the claims. This makes a Rule 23(b)(1)(B) limited fund settlement necessary. On August 23, 2023, the Court preliminarily approved the Settlement Agreement and preliminarily certified the Patient Settlement Class and Physician Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(1)(B) for settlement purposes.

After requesting additional information and revisions to the notice plan, (Doc. 73), the Court approved the notice plan on October 17, 2023. (Doc. 75). As established in the

3

Declaration of Cameron R. Azari, (Doc. 83), the Settlement Administrator implemented the notice plan as ordered. Specifically, the Settlement Administrator sent email notices to 8,696 potential Physician Settlement Class members and 4,629,204 potential Patient Settlement Class members. (*Id.* ¶¶ 13-14). The Settlement Administrator then sent postcard notices to all 479 Physician Settlement Class members who had an associated physical address and whose email notice was undeliverable after multiple attempts. (*Id.* ¶ 18). This resulted in direct notice to 8,113 out of 8,696[1] (93%) potential Physician Settlement Class members. (*Id.* ¶ 20). On top of direct notice, the Settlement Administrator engaged in a digital notice campaign from November 16 to December 15, 2023, generating 71,453,319 impressions. (*Id.* ¶¶ 22-30).

Since November 16, 2023, the Settlement Administrator maintained a dedicated website for the settlement, which received 44,405 unique visitor sessions, and 106,329 viewed web pages. (*Id.* ¶ 31). The Settlement Administrator also maintained a 24/7 toll-free telephone number to provide recorded answers to FAQs and enable potential class members to request that a claim package be physically mailed. (*Id.* ¶ 32). There have been 1,541 calls to the toll-free number since November 16, 2023, totaling 4,035 minutes of use. (*Id.*)

No objections were submitted by the January 15, 2024, deadline for recipients of

---

[1] The 583 delta is attributed to Physician Settlement Class members whose email notices were undeliverable after multiple attempts, and who did not have an associated physical address.

4

email notice, or the May 24, 2024, deadline for the 479 recipients of postcard notice. (*Id.* ¶ 34).

Though the deadline to submit a claim is still aways off—July 24, 2024—the Settlement Administrator had already received 8,902 claims from potential members of the Patient Settlement Class and 199 claims from potential members of the Physician Settlement Class as of May 28, 2024. (*Id.* ¶ 35).

Finally, pursuant to 28 U.S.C. § 1715, Notice was sent to all state Attorneys General. (*Id.* ¶ 6).

On January 16, 2024, after the Settlement Administrator completed the direct notice campaign, Defendants filed for bankruptcy protection under Chapter 11 in the Northern District of Texas, which halted these proceedings. (Doc. 77). To protect the interests of Defendants' unsecured creditors, including the settlement classes, the Patient Settlement Class and Physician Settlement Class each had members appointed to the Unsecured Creditors Committee and actively participated in the functions of the Committee while also working to lift the bankruptcy stay so that this Settlement could move forward. Counsel for the Physician Settlement Class also had to monitor the proceedings to protect the rights of its members to (1) receive contractual credits, (2) terminate the underlying contracts with Defendants and receive transition assistance from Defendants, and (3) be free from collection efforts for invoice months in which there was an outage as alleged in the Second Amended Complaint. (Doc. 67-1, § 3.2).

While Defendants took no position on Physician Settlement Class Counsel's request

that any sale order ensure that these rights would transfer with the assignment of any underlying contractors to the proposed purchaser in the bankruptcy, the proposed (and ultimately accepted) purchaser opposed this request on the grounds that it was "not a party to the settlement agreement, and it has not been finalized by order." *See* **Exhibit 1**. Thus, Physician Settlement Class Counsel had to prepare a limited objection to the motion to approve the bankruptcy sale. *See* **Exhibit 2**. This resulted in last-minute flight to Texas to attend the contested evidentiary hearing the next day, in which an attorney at Physician Settlement Class Counsel's law firm cross-examined multiple witnesses. Through this advocacy, the proposed purchaser changed its position and agreed to the inclusion of the following language in the sale order:

> Notwithstanding that the Settlement Agreement . . . will be deemed an Excluded Contract under the APA and will not be assigned to or assumed by Purchaser, the Purchaser agrees to (a) provide credits to eligible members of the Physician Settlement Class (as defined in the Settlement Agreement) who are party to an Assumed Contract and who submit a timely and valid Claim Form (as defined in the Settlement Agreement), to the extent contemplated by Section 3.2 of the Settlement Agreement, and (b) honor the termination and transition rights of eligible members of the Physician Settlement Class who are party to an Assumed Contract, to the extent contemplated by the last sentence of Section 3.2 of the Settlement Agreement, in each case (1) subject to the terms and conditions set forth in the Settlement Agreement, (2) to the extent such provisions of the Settlement Agreement are approved by the entry of a final order by the Class Action Court (as defined in the Stay Relief Order) (a "Final Order") and (3) further subject to any additional qualifications, restrictions or obligations imposed upon members of the Physician Settlement Class that are set forth in the Final Order or otherwise established by the Class Action Court.

**Exhibit 3**, ¶ 48.

While the bankruptcy court approved the sale of Defendants' assets to the proposed

purchaser, the funds generated from this sale still suffer the same defect as before—they are restricted by the North Carolina state court's orders and cannot be used to pay any claims to the classes here. Even if those funds could be used to pay claims, those funds would be depleted by secured creditors who have priority over the classes' mere unsecured claims and thus there would be little, if any, money left to satisfy the classes' claims.

Now that the stay of these proceedings has been lifted, the Settlement Administrator has confirmed that it has implemented the notice plan, and no member of the classes has objected to the Settlement Agreement, the parties move the Court to grant final approval of the Settlement Agreement and certify the classes.

## ARGUMENT

### I. The Notice Provided To Class Members Satisfied Rule 23 And Due Process Requirements.

Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the "best notice practicable under the circumstances." That happened here. (Doc. 83, ¶ 39).

The notices, as approved by the Court, informed class members about the details of the Settlement Agreement in understandable, plain language and satisfied all requirements of Rule 23(c)(2)(B) and established norms of due process. The Notice also explained the process for the filing of claims and objections to the Settlement Agreement, and Settlement Class Counsels' intention to seek attorneys' fees and be reimbursed for litigation expenses out of the settlement funds, and Settlement Class Counsel's intention to seek service awards on behalf of certain class members who acted on behalf of the class and who helped

achieve the settlement.

As detailed above, Plaintiffs have implemented the approved notice plan and provided direct notice to at least 93% of the identified potential class members. The Settlement Administrator also revised the settlement website on May 22, 2024, to reflect the revised deadlines and Final Approval Hearing date per the Court's Order on May 21, 2024. (Doc. 81).

In sum, the notice was the best notice practicable under the circumstances and satisfied due process requirements.

## II. The Should Grant Final Certification Of The Classes For Settlement Purposes Because They Satisfy The Requirements Of Rule 23(b)(1)(B).

To certify a class for settlement purposes, the Court must find that all requirements of Rule 23(a) and at least one of the provisions of Rule 23(b) are satisfied. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "The propriety of certifying plaintiff classes for the purposes of implementing settlements is well-recognized." *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 338 (D.S.C. 1991). In determining whether to certify a settlement class, any issue of whether the case, if tried, would present trial management problems is excluded, because the settlement precludes any trial. *Amchem*, 521 U.S. at 620.

Here, the Physician Settlement Class and Patient Settlement Class warrant certification under Rule 23(b)(1)(B), which provides for the certification of mandatory class when there is a "limited fund" and thus insufficient resources to satisfy the claims of all the members of the proposed class. *See Herrera v. Charlotte Sch. of L., LLC,* 818 F.

App'x 165, 172 (4th Cir. 2020); *see also* Fed. R. Civ. Proc. 23(b)(1)(B) (authorizing certification where "prosecuting separate actions by individual class members would create the risk of . . . [judgments] that, as a practical matter, would be dispositive of the interests of the other members" of the proposed class).

This Court already determined on a preliminary basis that the settlement classes here "easily satisfy the numerosity requirement," that the classes' claims, which "all arise out of the defendants' alleged failure to secure against, mitigate, and provide timely notice of the same data breaches . . . raise common questions of law and fact," and that the "named plaintiffs and counsel have zealously and ably represented the interests of the plaintiffs and the individuals they wish to represent." (Doc. 71 at 10-12). These conclusions remain true and are bolstered by the implementation of the notice plan and work to protect the rights of the Settlement classes during the bankruptcy proceedings. At the very least, the same analysis presented in the Memorandum in Support of Joint Motion for Approval of Settlement Class and Preliminary Approval of Class Action Settlement still holds true today. (Doc. 67). Thus, the numerosity, commonality and typicality, and adequacy requirements are satisfied.

Likewise, the Court determined that preliminary certification under Rule 23(b)(1)(B) was appropriate based on Defendants' limited funds available to satisfy the classes' claims. (Doc. 71 at 7-9). Here, the totals of the aggregated liquidated claims and the fund available for satisfying them, set at their maximums, demonstrate the adequacy of the fund to pay all the claims; the whole of the inadequate fund is to be devoted to the

9

overwhelming claims, after deducting for any fee awards, service awards, and costs of the Settlement Administrator; and the claimants identified by a common theory of recovery are treated equitably among themselves. Thus, the classes satisfy the factors necessary to certify under Rule 23(b)(1)(B) and bind all class members. *See Herrera*, 818 Fed. Appx. at 173 (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 838-39, 842 (1999)).

Because the Physician Settlement Class and Patient Settlement Class satisfy all the requirements of Rule 23, the Court should grant their final certification and approval as settlement classes under Rule 23(b)(1)(B).

### III. The Court Should Grant Final Approval Of The Settlement Agreement Because It Satisfies Rule 23(e).

A. *Standard*.

The final approval of a proposed class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in the light of all the relevant circumstances." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986). The judicial policy in favor of settlement is particularly strong in class actions and other complex litigation. *See In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 862 (11th Cir. 2009) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"). The "law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved." *In re Gen. Motors*

10

*Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *see also* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions §11.41, at 87-88 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy . . . By their very nature, because of the uncertainties of outcome, difficulties of proof, and length of litigation, class action suits lend themselves readily to compromise.").

Federal Rule of Civil Procedure 23(e) requires that any compromise of claims brought on a class basis be subject to judicial review and approval. The Fourth Circuit "applies a two-part test to determine whether a proposed settlement conforms to the requirements of [Rule 23(e)] by considering (1) fairness, which focuses on whether the proposed settlement was negotiated at arm's length; and (2) adequacy, which focuses on whether the consideration provided to the class members is sufficient." *McLaurin v. Prestage Foods, Inc.*, 2011 WL 13146422, at *3 (E.D.N.C. 2011) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991)). The 2018 amendments to Rule 23(e) also formalize a list of core considerations for settlement approval such as (1) whether class representatives and class counsel have adequately represented the class, (2) whether the proposal was negotiated at arm's length, (3) whether the relief provided for the class is adequate, and (4) whether the proposal treats Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

    B.  *The Settlement Is Fair*.

In analyzing whether a settlement is fair, the Fourth Circuit considers: "(1) the

11

posture of the case at the time settlement was proposed; (2) the extent of discovery that has been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel." *In re Jiffy Lube*, 927 F.2d at 158-59; *see also McLaurin*, 2011 WL 13146422, at *3. As the Court determined in its preliminary approval Order, "[a]ll four fairness factors support preliminary approval." (Doc. 71 at 14). The parties engaged in preliminary motion practice, amended the complaints multiple times, and engaged in informal discovery to investigate and confirm Defendants' limited funds before entering into the Settlement Agreement. The initial negotiations were in-person and supervised by The Honorable L. Patrick Auld at a judicial settlement conference held at the L. Richardson Preyer Courthouse and continued for months after that before the Settlement Agreement was finalized. In addition, as the Court determined, the settlement classes' counsel has "extensive experience in class action litigation." (*Id.* at 14).

    C.  *The Settlement is Adequate*.

In analyzing whether a settlement is adequate, the Fourth Circuit considers: (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. *In re Jiffy Lube*, 927 F.2d at 159. In the context of a limited fund settlement under Rule 23(b)(1)(B), "the dominant issues" may be the "expense of litigation and the likelihood of recovery." (Doc. 71 at 16 (quoting *Herrera*, 818 F. App'x

at 177)).

The Court's preliminary determination that the Settlement Agreement is adequate given "the limited funds available" and that it is "reasonable because it conserves the limited resources from the insurance policies for the maximum benefit of the plaintiff classes" should not be disturbed. (Doc. 71 at 17). Indeed, no member of the classes has objected to the proposed Settlement Agreement and Defendants' bankruptcy merely reinforces the limited funds available due to the MOU, state court orders, and available insurance coverage under "wasting" policies.

Further, even with the limited fund recovery, the relief offered for the Patient Settlement Class is adequate considering the risks of continued litigation. This is not only a complex case, but it is in an especially risky field of litigation: data breach. *See, e.g.*, *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."). Although data breach law is continuously developing, courts around the country are still grappling with what legal principles apply to the claims. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in [] data-breach case[s] are novel"). Because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Security Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765,

13

at *2 (D. Minn. Nov. 17, 2015). Through the Settlement Agreement, class members gain significant and immediate benefits without having to face further risk.

The Settlement will provide members of the Patient Settlement Class with timely benefits which, because of Defendants' limited funds, would exceed what they could recover were they to secure a favorable judgment at trial. The monetary benefits provided by the Settlement track other approved settlements in data breach class actions. *See*, *e.g.*, *Bray, et al. v. GameStop Corp.*, No. 1:17-cv-01365 (D. Del. Dec. 19, 2018) (approving claims made settlement that would reimburse up to $235/claim including, *inter alia*, expenses for lost time, payment for each card on which fraudulent charges incurred, costs of obtaining credit report, costs of credit monitoring and identity theft protection, as well as up to $10,000/claim for extraordinary expenses); *T.A.N. v. PNI Digit. Media, Inc.*, No. 2:16-cv 00132, Doc. 46 (S.D. Ga. Oct. 20, 2017) (approving settlement for reimbursement up to $250/claim for out-of-pocket expenses plus up to $10,000/claim for reimbursement of extraordinary expenses).

In sum, the above factors, particularly the Defendants' limited financial resources, weigh heavily in favor of a finding that the Settlement is adequate. The benefits of the Settlement exceed the cost of continued and protracted litigation, the Settlement avoids the potential risks and expenses of a trial, and the Settlement assures a fair distribution of the available funds. The terms of the Settlement are fair, and the compensation afforded under the Settlement Agreement correlates adequately with the damages and losses claimed by Plaintiffs.

## CONCLUSION

For these reasons, the Court should enter a Final Order and Judgment that approves the Settlement Agreement and certifies the classes.

This the 31st day of May, 2024,

                     */s/ Patrick G. Spaugh*
                     Russ Ferguson (N.C. Bar No. 39671)
                     russ.ferguson@wbd-us.com
                     Matthew F. Tilley (NC Bar No. 40125)
                     matthew.tilley@wbd-us.com
                     Patrick G. Spaugh (N.C. Bar No. 49532)
                     patrick.spaugh@wbd-us.com
                     WOMBLE BOND DICKINSON (US) LLP
                     One Wells Fargo Center, Suite 3500
                     301 S. College Street
                     Charlotte, North Carolina 28202-6037
                     Phone: 704-350-6361

                     *Settlement Class Counsel for Alliance Ophthalmology, PLLC; Dallas Retina Center, PLLC; Texas Eye and Cataract, PLLC; and Hofacre Optometric Corporation, on behalf of themselves and all others similarly situated*

                     */s/ Jean Sutton Martin*
                     Gary M. Klinger
                     gklinger@milberg.com
                     MILBERG COLEMAN BRYSON
                     PHILLIPS GROSSMAN, PLLC
                     227 W. Monroe Street, Suite 2100
                     Chicago, IL 60606
                     Phone: 866-252-0878

                     Jean Sutton Martin (N.C. Bar No. 25703)
                     jeanmartin@forthepeople.com
                     MORGAN & MORGAN

COMPLEX LITIGATION GROUP
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Phone: 813-559-4908

Gary E. Mason
gmason@masonllp.com
MASON LLP
5335 Wisconsin Ave. NW, Suite 640
Washington, DC 20015
Phone: 202-429-2290

*Settlement Class Counsel for Kimberly Farley, Chad Forrester, and Kimberly Sandvig, on behalf of themselves and all others similarly situated*

*/s/ Matthew Nis Leerberg*
Matthew Nis Leerberg (N.C. Bar No. 35406)
mleerberg@foxrothschild.com
Kristen Ward Broz
kbroz@foxrothschild.com
FOX ROTHSCHILD LLP
P.O. Box 27525
Raleigh, NC 27611
Phone: 919-755-8700

*Counsel for Defendants*

16

**Local Rule 7.3(d) Certificate of Word Count**

The undersigned hereby certifies that this memorandum does not exceed 6,250 words.

*/s/ Patrick G. Spaugh*
Patrick G. Spaugh