THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ALLIANCE OPHTHALMOLOGY, PLLC; DALLAS RETINA CENTER, PLLC; TEXAS EYE AND CATARACT, PLLC; AND HOFACRE OPTOMETRIC CORPORATION, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ECL GROUP, LLC; ECL HOLDINGS, LLC; EYE CARE LEADERS HOLDINGS, LLC; EYE CARE LEADERS PORTFOLIO HOLDINGS, LLC; INTEGRITY EMR, LLC; INTEGRITY EMR HOLDINGS, LLC; ALTA BILLING, LLC; AND ALTA BILLING HOLDINGS, LLC,<br><br>Defendants. | 1:22-CV-00296-LCB-JLW |
| KIMBERLY FARLEY, CHAD FORRESTER, AND KIMBERLY SANDVIG, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EYE CARE LEADERS HOLDINGS, LLC,<br><br>Defendant. | 1:22-CV-00468-CCE-JLW |

# PHYSICIAN SETTLEMENT CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND CLASS SERVICE AWARDS

Nearly three years, more than 700 billable hours, and an unexpected bankruptcy later, this matter is poised for final resolution. Under Section 5.1 of the Settlement Agreement, Defendants agreed that they would not challenge an application for 33% of the Physician Class Settlement Amount. That amount is approximately $7,199,949.50, with $1,460,449.50 in cash and $5,739,500 attributable to contractual credits. No member of the 8,000+ member Physician Settlement Class has objected to this provision of the Settlement Agreement, let alone any other provision of the Settlement Agreement negotiated by Physician Settlement Class Counsel ("Physician Counsel") on the class's behalf. Yet Physician Counsel seek only 33% of the proceeds that will be funded upon approval ($1,460,449.50) rather than 33% of the proceeds *and* potential value of the credits. They also seek 33% of any future cash that may be obtained through insurance coverage once the policies under Sections 3.3 and 3.4 of the Settlement Agreement are assigned upon final approval.

Physician Counsel also seeks approval of the following class service awards: $40,000 each to the initial named plaintiffs, Alliance Ophthalmology, PLLC ("Alliance"), and Dallas Retina Center, PLLC ("DRC"), and Texas Eye and Cataract, PLLC ("TEC"); $20,000 to Hofacre Optometric Corporation ("Hofacre"), who was added as a named plaintiff in the Second Amended Complaint; and $10,000 each to Shulkin Eye Associates, Gorden Eye Associates PA, Regional Eye Associates, Inc., Eye Associates, LLC, and

2

SurgiCenter of Vineland Holdings, LLC, all of whom engaged counsel to seek relief separately from Defendants.

Because these requests are fair and reasonable, the Court should grant the Motion.

## FACTUAL BACKGROUND[1]

In August 2021, Alliance engaged Physician Counsel to investigate the data breaches related to iMedicWare, and to pursue relief on its behalf. (**Exhibit 1**, Declaration of Patrick Grayson Spaugh dated May 31, 2024, ¶ 10). After investigating the facts and exploring Alliance's damages, which Alliance identified as more than $300,000 based on its records, Physician Counsel sent ECL Group, LLC ("ECL") a demand letter on August 20, 2021. (*Id.*) This was just the beginning.

Soon after, DRC engaged Physician Counsel to investigate the data breaches to myCare Integrity, and to pursue relief on its behalf. (*Id.* ¶ 11). After investigating the facts and exploring DRC's damages, which DRC identified as at least $65,000, Physician Counsel sent ECL a demand letter on September 14, 2021. (*Id.*)

TEC then engaged Physician Counsel to investigate the data breaches related to revenue cycle management services, along with iMedicWare, and to pursue relief on its behalf. (*Id.* ¶ 12). After investigating the facts and exploring Alliance's damages, which Alliance identified as more than $200,000 based on its records, Physician Counsel sent

---

[1] Physician Counsel incorporate by reference the Memorandum of Law in Support of the Joint Motion for Final Approval of Settlement Agreement and its Memorandum of Law in Support of its Joint Motion for Preliminary Approval of Class Action Settlement. (Doc. 67).

3

ECL a demand letter on October 7, 2021. (*Id.*)

In the ensuing months, Physician Counsel engaged in negotiations with opposing counsel, further factual investigation, and extensive research on potential claims against ECL, potential exposure to patients, and HIPAA reporting obligations. (*Id.* ¶ 13). The result of this work was the determination that there were legitimate class action claims that should be pursued on behalf of the Physician Settlement Class. (*Id.*) Thus, Physician Counsel filed the Class Action Complaint on April 15, 2022. (*Id.*)

Before filing the Class Action Complaint, Alliance paid Physician Counsel $36,863, TEC paid Physician Counsel $25,986, and DRC paid Physician Counsel $16,407 because the work had been targeted on obtaining individual relief on their behalf. (*Id.* ¶ 14). But all of that work was necessary and ultimately for the benefit of the Physician Settlement Class, as it shaped the factual investigation and development, legal research, and development of legal theories that supported the Class Action Complaint. (*Id.*) Physician Counsel therefore agreed that, if Alliance, TEC, and DRC would serve as named plaintiffs and class representatives, Physician Counsel would refund them the $79,256 they had paid. (*Id.*)

After filing the Class Action Complaint, Shulkin Eye Associates and Gorden Eye Associates PA also engaged Physician Counsel to support the Class Action Complaint, with further factual details and assessments of damages. (*Id.* ¶ 15).

Since the filing of the Class Action Complaint, the litigation has been hard-fought and protracted. ECL filed a partial motion to dismiss the Class Action Complaint, (Doc. No. 11), which resulted in Physician Counsel not only filing an opposition to the Motion

4

to Dismiss, (Doc. No. 15), but also preparing and filing an Amended Class Action Complaint, (Doc. No. 14). ECL again filed a partial motion to dismiss the Amended Class Action Complaint, (Doc. No. 22), which Physician Counsel defeated, (Doc. No. 30). This was critical because the Physician Settlement Class's fraud and unfair and deceptive trade practices claims survived, which established the potential recovery of treble damages and attorneys' fees should they prevail.

The Patient Settlement Class Actions were also filed beginning in June 2022, making it imperative to keep the Physician Settlement Class's claims on track so that any recovery would not be depleted by the Patient Settlement Class Action obtaining a recovery first. At the same time, the Patient Settlement Class Actions posed another threat because members of that class had direct contractual relationships with the Physician Settlement Class. In other words, to the extent that Defendants were liable to the Patient Settlement Class, it was because the Patient Settlement Class received treatment from the Physician Settlement Class, who had contracted with Defendants.

Soon after the Court denied the motions to dismiss the Patient Settlement Class Action and the Physician Settlement Class Action, Hofacre engaged Physician Counsel to investigate the data breaches related to yet another software, MyVisionExpress ("MVE"), and to pursue relief on its behalf. (Spaugh Decl., ¶ 11). This investigation revealed another subclass of the Physician Settlement Class that needed relief due to the mass data breaches and outages at issue. (*Id.*)

When Physician Settlement Class conducted informal discovery, it became apparent

quickly that, because (1) Defendants' assets are restricted, (2) the available insurance policies are wasting policies that were being eroded by the parallel class actions, and (3) any failure of the Patient Settlement Class Action to obtain a meaningful recovery against Defendants could result in a suit against the Physician Settlement Class members, a global resolution as soon as possible would be in the best interests of the Physician Settlement Class. (*Id.* ¶ 17). As part of this process, Physician Counsel engaged insurance counsel within its firm to investigate and review the available insurance policies to provide relief to the Physician Settlement Class. (*Id.*)

The parties therefore participated in a judicial settlement conference on March 16, 2023, before the Honorable L. Patrick Auld, which resulted in a framework for a potential global resolution. This resulted in continued negotiations about a potential global resolution. During these negotiations, Defendants identified Regional Eye Associates, Inc., Eye Associates, LLC, and SurgiCenter of Vineland Holdings, LLC as having engaged independent counsel that was actively seeking independent relief from Defendants. Defendants requested that these entities be included in any Settlement Agreement and request for Class Service Awards given that their pursuit of their claims had also contributed to the Defendants' determination to resolve this dispute and would help secure the finality of any Settlement Agreement. (*Id.* ¶ 19).

To facilitate these negotiations, the Court entered Interim Case Management Deadlines establishing deadlines to amend complaints, move for consolidation, move for appointment of interim lead counsel, finalize any settlement agreement, and move for

6

preliminary class certification and approval of any class certification.

On May 1, 2023, the Physician Settlement Class filed its Second Amended Complaint, which added (a) Hofacre and the MVE class as plaintiffs, (b) all Defendants other than the initial defendant, ECL; and (c) claims for negligence and defamation.

Physician Counsel then sent demands to Defendants within the disclosed limits of the applicable insurance policies. (*Id.* ¶ 18). In response, Travelers agreed to provide full coverage under the Travelers Policy, which amounted to $2,920,899. (*Id.*) Prior to Physician Counsel's Second Amended Complaint and demand letters, Travelers had tendered no coverage for the claims at issue. (*Id.*)

After Travelers provided coverage, the parties continued negotiations and finalized the Settlement Agreement in late July 2023. The Settlement Agreement provides these benefits, among others, to the Physician Settlement Class:

- A settlement fund of $1,460,449.50, which, after deducting for any Fee Award, the Settlement Administrator's costs, and any Class Service Awards, will be distributed equally to claimants;

- Contractual credits for any member of the Physician Settlement Class who remained under contract with any Defendant as of April 2023 and who had not already received a credit, with a total potential value of $5,739,500 for the Physician Settlement Class;

- The right to terminate contracts with Defendants without any penalty and the obligation that Defendants provide reasonable efforts to assist any Physician Settlement Class member with transitioning to a new vendor, which includes the complex process of migrating the system's medical and patient data;

- Defendants' agreement to not attempt to collect any unpaid invoice for a month in which there was a service outage as alleged in the

7

Second Amended Complaint;

- 67% of any insurance proceeds obtained from the assigned insurance policies, to be distributed equally to claimants; and,

- A release of all claims the Patient Settlement Class may have against the Physician Settlement Class related to the data breaches.

(Doc. 67-1).

The parties then sought preliminary approval of the Settlement Agreement, which the Court granted on August 23, 2023. (Doc. 71). During this process, Physician Counsel managed the settlement administrator, development of the notice plan, and implementation of same to ensure compliance with the Court's requirements. (Spaugh Decl., ¶ 20).

After completing the notice plan, Defendants filed for bankruptcy protection under Chapter 11 in the Northern District of Texas, which halted these proceedings. (Doc. 77). Physician Counsel had to engage bankruptcy counsel within its firm to monitor these proceedings and protect the interests of the Physician Settlement Class. (Spaugh Decl., ¶ 22). This started with successfully advising and preparing Dr. Hermang K Pandya, owner of DRC, to interview for and be appointed to the Unsecured Creditors Committee. (*Id.*). In that role, Dr. Pandya has served as a fiduciary for all unsecured creditors, including the Physician Settlement Class, of Defendants. (*Id.*). This has taken time away from his daily practice. (*Id.*).

Physician Counsel's advocacy on behalf of the Physician Settlement Class culminated in securing that the credits and non-monetary relief under the Settlement Agreement would be transferred with the underlying contracts when assigned to the buyer

8

in the bankruptcy. While Defendants took no position on Physician Counsel's request that any sale order ensure that the credits and termination rights transfer with the underlying contracts when assigned, the proposed (and ultimately approved) buyer opposed this request on the grounds that it was "not a party to the settlement agreement, and it has not been finalized by order." (Doc. 88-1). Thus, Physician Counsel had to prepare a limited objection to the motion to approve the bankruptcy sale. (Doc. 88-2). Wojciech Jung, a bankruptcy Partner in Womble Bond Dickinson (US) LLP's New York City office, also had to make an emergency flight to Texas on Mother's Day to attend the contested evidentiary hearing the next day, in which he cross-examined multiple witnesses to protect Physician Counsel's rights under the Settlement Agreement. (Spaugh Decl., ¶ 22). Through Mr. Jung's advocacy, counsel for the bankruptcy buyer changed its position and agreed to the inclusion of the following language in the sale order:

> Notwithstanding that the Settlement Agreement . . . will be deemed an Excluded Contract under the APA and will not be assigned to or assumed by Purchaser, the Purchaser agrees to (a) provide credits to eligible members of the Physician Settlement Class (as defined in the Settlement Agreement) who are party to an Assumed Contract and who submit a timely and valid Claim Form (as defined in the Settlement Agreement), to the extent contemplated by Section 3.2 of the Settlement Agreement, and (b) honor the termination and transition rights of eligible members of the Physician Settlement Class who are party to an Assumed Contract, to the extent contemplated by the last sentence of Section 3.2 of the Settlement Agreement, in each case (1) subject to the terms and conditions set forth in the Settlement Agreement, (2) to the extent such provisions of the Settlement Agreement are approved by the entry of a final order by the Class Action Court (as defined in the Stay Relief Order) (a "<u>Final Order</u>") and (3) further subject to any additional qualifications, restrictions or obligations imposed upon members of the Physician Settlement Class that are set forth in the Final Order or otherwise established by the Class Action Court.

(Doc. 88-3, ¶ 48).

Now that the stay of these proceedings has been lifted, the Settlement Administrator has confirmed that it performed the notice plan, providing direct notice[2] to 8,113 of 8,696 (93%) Physician Settlement Class Members. (Doc. 83). To date, 199 members of the Physician Settlement Class have submitted claims. (*Id.* ¶ 35). Critically, not a single member of the Physician Settlement Class has objected to the Settlement Agreement or the prospect of Physician Counsel seeking a fee award in the amount of 33% of the Physician Settlement Fund. (*Id.* ¶ 34).

## STANDARD

Under Rule 23(h) of the Federal Rules of Civil Procedure, "[i]n a certified class action, the Court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." There are two main methods for calculating the reasonableness of attorneys' fees—the lodestar method and the percentage-of-recovery method. . . . "'[T]here is a strong presumption that the lodestar figure is reasonable.' The percentage-of-recovery method considers the portion of the total settlement fund that will go to attorneys' fees. A district court may choose the method it deems appropriate based on its judgment and the facts of the case." *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542,

---

[2] This number excludes any indirect notice through the digital media campaign, which delivered 71,453,319 impressions.

554 (2010)). Because the Fourth Circuit does not have a "clear preference, courts in this Circuit 'will review the lodestar method to serve as a cross-check to ensure that the percentage award is fair and reasonable.'" *Lamie v. LendingTree, LLC*, No. 322CV00307FDWDCK, 2024 WL 811519, at *2 (W.D.N.C. Feb. 27, 2024) (quoting *Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *4 (M.D.N.C. Sept. 29, 2016)).

## ARGUMENT

**1. The Requested Attorneys' Fees are Reasonable.**

The requested 33% of the Physician Settlement Fund is a standard percentage award that courts in the Fourth Circuit routinely award to class counsel. *See, e.g.*, *Lamie*, 2024 WL 811519, at *2 (W.D.N.C. Feb. 27, 2024) (finding award of one-third of Settlement Fund reasonable); *Silva v. Connected Invs., Inc.*, No. 7:21-CV-00074-D, 2023 WL 3807026, at *2–3 (E.D.N.C. June 2, 2023) (same); *McAdams*, 26 F.4th at 162 (affirming award of 43% of common fund); *Rodriguez v. Riverstone Communities, LLC*, No. 5:21-CV-486-CD, 2024 WL 407483, at *1 (E.D.N.C. Feb. 2, 2024) (finding award of 29.4% of common fund reasonable); *Williams v. GbR Pizza, Inc.*, No. 1:21cv00828, 2023 U.S. Dist. LEXIS 233405, at *9 (M.D.N.C. Apr. 26, 2023) (finding award of one-third of common fund reasonable in FLSA action).

Not only is the requested percentage well within the normal range, it satisfies the following factors the Fourth Circuit uses to determine the "reasonableness of fees pursuant to the percent-of-recovery method: (1) the results obtained for the Class; (2) objections by

members of the Class to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) public policy; and (7) awards in similar cases." *Rodriguez*, 2024 WL 407483, at *1 (E.D.N.C. Feb. 2, 2024).

First, Physician Counsel obtained significant results for the class, including both monetary and nonmonetary relief. By obtaining the release from the Patient Settlement Class, the Physician Settlement Class essentially killed two birds with one stone. Second, no class member has objected to the settlement terms or requested fees, (Doc. 83, ¶ 34), despite being on notice that a fee award would be deducted from the Physician Settlement Fund:

> **15. How will Class Counsel be paid?**
>
> Physician Class Counsel will submit to the Court an application seeking a Fee Award of no more than 33% of the Physician Settlement Fund, to which Defendants will not object, and Patient Class Counsel will submit to the Court an application seeking a Fee Award of no more than 33% of the Patient Settlement Fund, to which Defendants will not object.

(Doc. 74-1). Third, Physician Counsel epitomized full-service counsel, providing advice on data privacy obligations, insurance coverage, and bankruptcy matters in addition to the sophisticated class action claims at issue. Fourth, as reflected in the pleadings, this is a complex, multi-class, multi-defendant, litigation that has extended nearly three years. Fifth, while Alliance, DRC, and TEC paid a collective $79,256 in fees to support Physician Counsel's initial activities, Physician Counsel agreed that it would repay that amount if a class was certified. Thus, if the Court approves the Settlement Agreement, Physician

Counsel will receive no payment for its services other than the Court's fee award. In any event, the $79,256 is a fraction of the lodestar fees incurred by Physician Counsel, who has taken significant risk to pursue class-wide relief over the last few years. Sixth, public policy supports awarding attorneys' fees to incentivize attorneys to represent classes to protect their rights in the aggregate. Seventh, as shown above, the award here aligns with awards in similar cases. *See, e.g., Roldan v. Bland Landscaping Co., Inc.*, No. 320CV00276KDBDSC, 2022 WL 17824035, at *6–7 (W.D.N.C. Dec. 19, 2022) (awarding fees of $583,333.33 as one-third of the settlement fund in FLSA case when attorneys had spent 520 hours and paralegals had spent 197.4 hours).

The lodestar crosscheck reaffirms the reasonableness of the requested award. Physician Counsel has had 14 attorneys[3] spend a total of 706 hours[4] on this matter, at an effective rate of $604 per hour, for a total value of $426,424. (Spaugh Decl. ¶ 6). Two paralegals have also worked a total of 5.6 hours at an effective rate of $370, for a total value of $2,072. (*Id.* ¶ 6). The time spent is reasonable and consistent with a nearly 3-year litigation, ranging from pre-dispute demands to post-Settlement Agreement bankruptcy proceedings. The lodestar rate of $604 is also reasonable given the complexity of the matter, and sophistication of counsel. Indeed, "[o]ther courts in this District have accepted rates of $700 per hour for attorneys in particularly complex cases." *Johnson v. Palms*

---

[3] Six attorneys' time account for more than 96% of the time spent on the matter.
[4] This does not account for additional time to be spent preparing for and attending the fairness hearing, and assisting with administration of the Settlement Agreement.

*Assocs., LLC*, No. 1:20-CV-1049, 2023 WL 5276348, at *4 (M.D.N.C. Aug. 16, 2023) (quoting *Linnins v. HAECO Ams., Inc.*, 2018 U.S. Dist. LEXIS 183839, *6-8, 2018 WL 5312193 (approving attorney's fees of $650 and $700 per hour)); *Wallace v. Greystar Real Est. Partners, LLC*, No. 1:18CV501, 2022 WL 3908800, at *3 (M.D.N.C. Aug. 30, 2022) (finding partner rates of $650 and associate rates of $450 "within the range generally approved by courts").

Under the lodestar method, Physician Counsel incurred fees of $428,496. When compared to the requested fee amount of $486,816.50, the lodestar multiplier is 1.14, which Courts in the Fourth Circuit routinely approve. *Roldan*, 2022 WL 17824035, at *6–7 (W.D.N.C. Dec. 19, 2022) (approving lodestar multiplier of 1.85 in FLSA case); *Lamie*, 2024 WL 811519, at *1–3 (W.D.N.C. Feb. 27, 2024) (approving "modest" multiplier of 1.26); *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, at *1–3 (M.D.N.C. Jan. 10, 2007) (approving a "modest" multiplier of 1.6); *Kruger*, 2016 WL 6769066, at *4–5 (M.D.N.C. Sept. 29, 2016) (approving a one-third fee of 3.69 times the lodestar); *Williams*, 2023 U.S. Dist. LEXIS 233405, at *9 (M.D.N.C. Apr. 26, 2023) (approving lodestar multiplier of 2.26 in FLSA case); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 507 (M.D.N.C. 2018) (approving lodestar multiple of 1.8 and noting that "Courts have found that lodestar multipliers ranging from 2 to 4.5 demonstrate the reasonableness of a requested percentage fee").

All of this is especially true given that Physician Counsel limit their request for a percentage of recovery to the settlement fund, rather than seeking any award of fees based

14

on the value of the credits. While the Class Action Fairness Act restricts the percentage of recovery method to *redeemed* "coupons,"[5] it nevertheless allows the use of the lodestar method to award fees where "coupon" relief is involved. *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 27 F.4th 291, 302 (4th Cir. 2022) (affirming award of fees that amounted to 28% of the settlement fund *and* coupon value, based on performance of lodestar method on remand). When considering the Physician Settlement Fund of $1,460,449.50 *and* the potential $5,739,500 value of the contractual credits, the requested fee award of $486,816.50 is less than 7% of the total potential monetary value of $7,199,949.50. And this does not even account for the value of the other nonmonetary relief, like the Patient Settlement Class release and the cessation of collection efforts for months in which there was an outage.

For these same reasons, the Court should approve Physician Counsel's request for 33% of any recoveries from the insurance policies to be assigned upon approval. The pursuit of these policies will require considerable work given that, to date, the insurers have denied coverage.

Finally, Physician Counsel's requested costs of $4,102.97 are reasonable and minimal given the duration of this matter. (Spaugh Decl. ¶ 8). Moreover, much of these costs were incurred in the bankruptcy proceedings and necessary to protect the rights of

---

[5] Physician Counsel do not concede that the contractual credits here constitute "coupons" under the Class Action Fairness Act, but provide this context to be conservative about how they could be treated.

the Physician Settlement Class under the Settlement Agreement. (*Id.*)

### 2. The Requested Class Service Awards Are Reasonable.

Alliance, DRC, and TEC jumpstarted this litigation on behalf of the class nearly three years ago. Each entity represents the unique interests of a specific subclass. They spearheaded the pre-litigation phase, participating in factual development and many calls with counsel about legal strategy. They also paid a collective $79,256 in fees to support Physician Counsel's initial research, investigation, and development of class-wide legal theories. While Physician Counsel will repay them upon obtaining final approval of the Settlement Agreement, their initial investment ensured that a full-service law firm equipped to handle the varied needs of the class would take on the case. In addition, Dr. Pandya took time away from his practice and dedicated time to protecting unsecured creditors of Defendants, including the Physician Settlement Class, by serving on the Unsecured Creditors Committee since February 2024. Based on this outstanding service on behalf of the Physician Settlement Class, Physician Counsel requests that the Court award each $40,000 in a class service award.

A $20,000 class service award is also warranted for Hofacre, who joined the fray as a named plaintiff in 2023 to generate relief and protection for the MVE subclass, and whose efforts helped make the Settlement Agreement possible.

Finally, a $10,000 class service award is reasonable for Shulkin Eye Associates, Gorden Eye Associates PA, Regional Eye Associates, Inc., Eye Associates, LLC, and SurgiCenter of Vineland Holdings, LLC, all of whom supported the litigation efforts

16

against Defendants and contributed to the Settlement Agreement.

These requested class service awards were identified in the Settlement Agreement and long form notice and no class member has objected to any of them:

> Class Counsel will also request that the Court approve "Class Service Awards," which are Court-approved awards to specific members of the Settlement Classes, including the named plaintiffs, for their efforts in bringing the claims at issue in the ECL Litigation and achieving the benefits of this Settlement on behalf of the Settlement Classes. For the Physician Settlement Class, the requested service awards are $40,000 each to Alliance, DRC, and TEC, $20,000 to Hofacre, and $10,000 each to Shulkin Eye Associates, Gorden Eye Associates PA, Regional Eye Associates, Inc., Eye Associates, LLC, and SurgiCenter of Vineland Holdings, LLC, payable from the Physician Class Settlement Fund. For the Patient Settlement Class, the

(Doc. 74-1; Doc. 83, ¶ 34),

These are reasonable class service awards under the circumstances of this litigation and within the context of other class service awards. *See*, *e.g.*, *Hollis v. Valley Proteins Inc.*, No. 321CV00112FDWDSC, 2022 WL 703606, at *8 (W.D.N.C. Mar. 8, 2022) (approving class service awards of $100,000, $50,000, and $50,000 to named plaintiffs); *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 577 (D.S.C. 2015) (citing *In re Auto. Refinishing Paint Antitrust Litig.*, No. 1426, 2008 WL 63269, at *7-8, (E.D. Pa. Jan. 3, 2008)) (approving a $ 30,000 award for each class representative); *McBean v. City of New York*, 233 F.R.D. 377, 391–92 (S.D.N.Y. 2006) (stating incentive awards of $25,000 are "solidly in the middle of the range"); *Roldan*, 2022 WL 17824035, at *6–7 (W.D.N.C. Dec. 19, 2022) (approving class service awards of $25,000 and $15,000 in FLSA action).

## CONCLUSION

For these reasons, Physician Counsel respectfully requests that the Court grant the

unopposed motion for award of attorneys' fees, reimbursement of costs, and class service awards.

This the 31st day of May, 2024,

*/s/ Patrick G. Spaugh*
Russ Ferguson (N.C. Bar No. 39671)
russ.ferguson@wbd-us.com
Matthew F. Tilley (NC Bar No. 40125)
matthew.tilley@wbd-us.com
Patrick G. Spaugh (N.C. Bar No. 49532)
patrick.spaugh@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
One Wells Fargo Center, Suite 3500
301 S. College Street
Charlotte, North Carolina 28202-6037
Phone: 704-350-6361

*Settlement Class Counsel for Alliance Ophthalmology, PLLC; Dallas Retina Center, PLLC; Texas Eye and Cataract, PLLC; and Hofacre Optometric Corporation, on behalf of themselves and all others similarly situated*

## Local Rule 7.3(d) Certificate of Word Count

The undersigned hereby certifies that this memorandum does not exceed 6,250 words.

*/s/ Patrick G. Spaugh*
Patrick G. Spaugh