```
1              IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
2

3   KIMBERLY FARLEY, on behalf      Civil Action
    of herself and all others      Case No. 1:22V468
4   similarly situated,

5

         Plaintiffs,
6                                   June 24, 2024
    vs.                             Greensboro, North Carolina
7

    EYE CARE LEADERS HOLDINGS, LLC,
8

         Defendant.
9   _____/

10

11     TRANSCRIPT OF FINAL APPROVAL OF SETTLEMENT PROCEEDINGS
            BEFORE THE HONORABLE CATHERINE C. EAGLES
12               CHIEF UNITED STATES DISTRICT JUDGE

13  APPEARANCES:

14  For the Patient Class:
                         JEAN SUTTON MARTIN, ESQ.
15                       Morgan & Morgan

16                       LISA WHITE, ESQ.
                         Mason, LLP
17
    For the Physician Class:
18                       THOMAS R. FERGUSON, III, ESQ
                         PATRICK G. SPAUGH, ESQ.
19                       Womble Bond Dickinson (USA) LLP

20  For the Defendant:   KIP NELSON, ESQ.
                         Fox Rothchild, LLP
21

22  Court Reporter:      J. Allen, RPR
                         (336) 332-6033
23

24
             Proceedings reported by stenotype reporter.
25      Transcript produced by computer-aided transcription.
```

1               **P R O C E E D I N G S**

2          (Court in session at 10:00 a.m.)

3          **THE COURT:**  Okay.  We're here in Farley against Eye

4   Care Leaders, 22CV468.  That's the lead case -- there have been

5   a bunch of them that have been consolidated -- for what we all

6   hope is the final approval of the settlement in this matter,

7   class action settlement.

8          I sent you all, or Ms. Winchester did on my behalf, a

9   couple of emails with questions that I had.

10         I don't expect any of these answers to cause

11  problems, but I did want to be sure that I was fully examining

12  it in view of the fiduciary obligations that the Court has to

13  the classes, and just to be sure I was understanding correctly.

14         I think probably my biggest question is, for the

15  physician class, the claims against these other two insurance

16  companies and, you know, it is still a class action.  I

17  certified the class.  What's going to happen there?  Do I still

18  have that?  Do I have to approve any settlement you reach with

19  those other two insurance companies and the attorney's fees?  I

20  mean, there is a one-third fee agreement for that in there, but

21  that all got to explain that to me.

22         I just want to know -- it seems to me that I might

23  still need to be involved, if and when you get any money out of

24  those folks.

25         Of course if you have to file a lawsuit and it is

1    somewhere else, then maybe it should be somebody else who looks

2    at it.  I don't know the answer to that.  That probably is sort

3    of the biggest piece that I was not real sure about.

4    Everything else I think was kind of technical.

5            Me get everybody to introduce themselves for the

6    record.

7            Here for the plaintiff?

8            **MS. WHITE:**  Lisa White from the Mason firm.

9            **THE COURT:**  Okay.

10           **MS. MARTIN:**  Good morning, Your Honor, Jean Martin

11   from Morgan and Morgan, on behalf of the patient class.

12           **THE COURT:**  Hold on.  I've been in court so much I've

13   run out of ink in my pens.  I have got another one.

14           **MR. FERGUSON:**  Good morning, Your Honor, Russ

15   Ferguson of Womble, Bond, Dickinson, here on behalf of the

16   physician class.  I'm here with Patrick Spaugh, who has the

17   answers to your questions.

18           **MR. SPAUGH:**  Good morning, Your Honor.

19           **THE COURT:**  Good morning.

20           Here for the defendants?

21           **MR. NELSON:**  Yes, Your Honor, Kip Nelson from Fox,

22   Rothchild.

23           **THE COURT:**  Mr. Lindberg is keeping us all busy.  I

24   think every judge in the state -- I think -- this one, I mean,

25   it does touch on his problems, but probably the least directly

1  of anything else that I've got going on involving him.

2          I don't know how you all want to do this.  You know,

3  I've read everything, as is probably obvious from those

4  incredibly detailed questions that I asked you.  I have got an

5  order pretty much read but, you know, it looks to me

6  like -- this is the same thing I said at preliminary approval.

7  The only money is the insurance money.  You are getting all of

8  the insurance money.  It is being divided equitably or equally

9  among the class members.  Really, that's about it, and

10  everything else is just detail.

11          So that seems quite fair to me still.  I read

12  everything.  You know, I would like to know a little bit more

13  about it, so maybe I'll just turn it over to plaintiffs'

14  counsel, and one of you all can start and, hopefully, you'll

15  answer all of my questions and tell me anything else that you

16  want me to now.

17          **MR. SPAUGH:**  Patrick Spaugh, again from Womble, Bond

18  Dickinson.  My plan is to go over the questions that you've

19  asked with respect to them being globally applicably, or

20  specific position class.  Then I'll let Ms. Martin handle the

21  rest, and let Mr. Nelson maybe handle some of the Colorado

22  Banker Life Insurance questions that you had.

23          So let me start with your primary concern for today's

24  hearing, and that's the approval of the attorneys' fees coming

25  out of the insurance -- the two assigned insurance policies.

1     Your question is:  Does that require me to issue a

2 future approval of those fees?  Can I do that now?  What is

3 that going to look like?  Do I retain jurisdiction?  Those are

4 all very fair questions.

5     Our first position is, no, Your Honor, that does not

6 require separate class action settlement approval.  The reason

7 being is, these are claims by ECL against its insureds.  So the

8 defendants, they are the insured.  They are the ones that have

9 the rights under the insurance policies to those proceeds that

10 have submitted claims that have been rejected by their

11 insurers.

12     So to the extent that there is a coverage dispute,

13 that is defendant's coverage dispute that they have.  It is not

14 the classes coverage dispute.  The class doesn't have claims

15 against those insurers.

16     The only reason that the class comes into play is

17 because ECL has assigned its rights under those policies to the

18 class.  So the class is just standing in the shoes of the

19 rightful insurance holder to pursue the proceeds that we

20 believe should have been provided to the defendant.  It is not

21 really a class action settlement, because it is not really a

22 class action dispute.  It is really a dispute between the

23 defendant and the insureds.

24     **THE COURT:**  Right.  But you, as representing that

25 class and pursuing those rights, still have obligations to the

1  class.  I mean, your obligations are to the physician class,

2  not to the defendant.  Right?

3        **MR. SPAUGH:**  Absolutely, Your Honor, that is correct.

4        **THE COURT:**  That is where I'm getting a little

5  glitched up, because you -- I don't think you can settle that,

6  for example, without court approval.  Right?

7        **MR. SPAUGH:**  So what we believe is, that by

8  approving -- if the Court approves this settlement agreement,

9  and this settlement agreement provision that we would retain 33

10  percent, that approval alone is enough.  Any future settlement

11  claim would actually be subsumed in that.

12        It is kind of like the movie Inception, it is a dream

13  within a Dream.  It is a settlement within a settlement.

14        **THE COURT:**  I guess -- I kind of have less problems

15  with the attorneys' fees, and maybe I didn't actually ask this

16  next part directly, but let's just imagine, okay, I have no

17  idea, but pick a policy, there is a million dollars in

18  coverage, they've denied.  You are negotiating with them.  You

19  agree with them on behalf of the class to settle for $400,000.

20  I'm just making the numbers up, because I have no idea.  Well,

21  that is a settlement on behalf of the class, who holds the

22  rights assigned from the defendant.  So doesn't that have to be

23  approved?

24        I really didn't have a problem with a third of

25  whatever you are able to work out with them because I've been

approving attorneys' fees for a zillion years, and I'm familiar

with the circumstances, but it is a little funny to have

advanced approval of a fee from that unknown settlement.

If you have to go sue them and you get a judgment,

you know, maybe you're even entitled to more than a third at

that point, though.  I assume you would be able to resolve that

on papers without a trial.

Do you see what I am saying?

**MR. SPAUGH:**  I do.  I understand the Court's pause

and caution here.  I'll again go back to, while the proceeds

from any settlement would be distributed to the class or any

portion of attorneys' fees, it is still on behalf of the

defendants, rather than the class.  It is just the class

receives the proceeds that should have gone to ECL, or to the

defendants.

That said, Your Honor, I do believe that -- well, all

of us here believe that this settlement before you, given the

limited fund nature is already a fair and adequate settlement,

so what we would be doing is at most, increasing the pot.  The

pot will not be reduced whatsoever.  Any proceeds that are

coming here are proceeds that are going to increase the amount

going to the class.

To the extent that the Court is inclined to approve

the settlement in the amounts that have been provided to the

class members as already drafted, then anything in addition

1  would just be on top of that.

2          So even if the Court looks at it from the perspective

3  of, this does require class action approval within this

4  context, the 33 percent, as you mentioned, is appropriate and

5  the percentage method here.

6          This isn't the type of dispute that we're going to

7  call them up and they are just going to write a check, because

8  ECL tried that.  They rejected it.

9          One of them filed a declaratory judgment action in

10 this Court, which was then dismissed through the agreement of

11 ECL, without prejudice.  There is going to incentivize be a

12 dispute, and that 33 percent protects the class because it

13 incentivizes us to do the work to go after that money for them

14 on their behalf.

15         **THE COURT:**  I get that.  But most lawsuits settle,

16 and that's kind of where I'm wondering about it, because it is

17 one thing if you sue them or they sue you, they sue ECL and you

18 all defend it in a DJ action and it goes to verdict, judgment,

19 maybe for the class, maybe not.  Fine, one-third divided

20 equally, it is all clear.

21         What if you -- it is likely to settle, maybe.  I

22 don't know, but that's often what happens, maybe less often in

23 insurance coverage cases than others, so isn't that -- if it

24 settles, your client -- what is now the classes claim by

25 assignment against this insurance company, or both of them, one

1  of them or the other or both, doesn't a judge have to approve

2  that as fair and reasonable?

3          **MR. SPAUGH:** Your Honor, I think that's what you

4  would be doing here, and I think what you would be doing is,

5  saying that the amount of the physician fund that is going to

6  the physician settlement class members is already fair and

7  reasonable. To the extent that any additional amount is added,

8  that's necessarily fair and reasonable as a result. I think

9  that something --

10          **THE COURT:** Part of what makes it fair and reasonable

11  is that you got this assignment.

12          **MR. SPAUGH:** Correct.

13          **THE COURT:** So --

14          **MR. SPAUGH:** If I could add a few different notes on

15  top of that. I do want to point out that we are not opposed to

16  coming back before the Court and getting approval. This is

17  just a matter of us trying to be, I think all of us

18  collectively, including the Court, identifying the most

19  efficient way of handling this. It is not a matter of us being

20  afraid of, oh gosh, the Court may not approve whatever

21  settlement we ultimately --

22          **THE COURT:** No, absolutely not. You all are not

23  going to take -- I have every confidence that you would enter

24  into an appropriate settlement. But still, the rules say that

25  class action settlements have to be approved by a court.

1  Right?

2          **MR. SPAUGH:**  I think that's correct, and I think that

3  here, again, the Court is already approving this settlement

4  that provides for this specific method of recovery against the

5  insurance policy.

6          **THE COURT:**  So who is going to decide to take a

7  settlement offer from the insurance company?  Am I entrusting

8  the lawyers?  Are the class representatives still making that

9  -- who is making that decision to settle?  It just seems like I

10  might have to approve it.

11          **MR. SPAUGH:**  And that's fair.  If the Court

12  ultimately determines that that is ultimately -- that's fair by

13  us.  We believe that it is fine either way, frankly, and we're

14  just trying -- what we would request, though, is that the

15  ultimate distributions to the class members and to the

16  attorneys that they are not held up.

17          **THE COURT:**  Absolutely, not held up.

18          **MR. SPAUGH:**  One other thing I would note in terms of

19  just the general fairness, why we believe the Court can approve

20  this now is, the fact that we sent out 5,000 direct notices,

21  and no one has objected to this recovery.  So we think that

22  that is a further line of support.

23          That's really all I have to cover on that position,

24  unless the Court has any questions.

25          **THE COURT:**  I really didn't have any problem with it.

1    I don't know why it took me so long to say, wait a minute, this

2    is a little bit of a problem here, to be clear, because I

3    didn't realize it until fairly late last week, and I could have

4    realized it a year ago, or whenever you all first settled it,

5    but I didn't.

6            **MR. SPAUGH:**  You are correct, the defendants would

7    not be the ones who would retain the decision in terms of who

8    is accepting or approving the settlement.

9            **THE COURT:**  Right.

10           **MR. SPAUGH:**  It would be the physician settlement

11   class counsel, along with the physicians and some of the class

12   representatives who would be responsible, absent the Court

13   approval.

14           **THE COURT:**  So do you have any anticipation -- or

15   expectation, might be a better word at this point about those

16   two insurance policies and where that might be resolved?

17           **MR. SPAUGH:**  I think it is going to be hard fought.

18   We have not engaged in negotiations because the assignment is

19   not effective until the settlement agreement is approved.

20           I know that they attended the Court's remote

21   hearing -- one of the insurers attended the Court's remote

22   hearing on the preliminary approval.  I'm not sure who is in

23   the gallery.  Maybe somebody is here on one of those policies,

24   but we do anticipate that it will be hard fought.

25           **THE COURT:**  You don't have any idea where?

1         **MR. SPAUGH:** Where, I believe it would be in this

2 court. I believe it would be in the Middle District.

3         **THE COURT:** Well, that simplifies things, because

4 until I give up the ghost and retire, which is not happening

5 tomorrow, you know, it could come to me, and then it would kind

6 of be a moot point, because I could take care of it then.

7         If it was going to end up in like Indiana or some

8 place, you know -- not that there is anything wrong with

9 Indiana, I just pulled that out of the air.

10         **MR. SPAUGH:** I do think it is North Carolina, because

11 that's where the declaratory action was filed by one of the

12 insurers, and that's where the defendants were located, was in

13 Durham.

14         **THE COURT:** Go ahead.

15         **MR. SPAUGH:** The next question you had, Your Honor,

16 was the affect of the bankruptcy on the settlement and how that

17 was worked out. So I think that's a helpful time for us to

18 talk about something unanticipated that happened, but I'll

19 admit, we are proud of the results that we obtained on behalf

20 of the settlement classes in the context of that bankruptcy.

21 We were just as surprised as the Court was when ECL filed for

22 bankruptcy there. We did find that it further illustrates the

23 limited funds at issue here.

24         **THE COURT:** Exactly.

25         **MR. SPAUGH:** It is kind of a perfect example of why

this is this specific type of settlement, but once they did

that, you know, we immediately took action to try to say, well,

how can we protect these class interests.  We worked with the

physician class representative.  I know the patient class

worked with one of their representatives, and we obtained seats

on the secured creditors committee, and that involved

preparation for interviews and attending --

        **THE COURT:**  Slow down.

        **MR. SPAUGH:**  Yes, I apologize.  And being prepared to

represent the classes' interest, but really on behalf of all of

the secured creditors.

        So the next step was, that they identified a buyer,

and that buyer, as you know, is Colorado Bankers Life

Insurance, and that's where things got a little bit squirrely

and, the reason being is, that the buyer wanted to essentially

purchase the assets as it would to do in this Chapter 11

Bankruptcy, and it wanted to do so free and clear of any

obligations under the settlement agreement, because in its

mind, we're not parties to the settlement agreement, and the

Court hasn't granted final approval of the settlement

agreement, so why should we assume these obligations.

        That required us to fight vigorously in a number of

ways.  One was, to insure that the claims bar date for the

bankruptcy was extended until after the determination of

whether or not the Court will grant final approval of the

settlement, because initially the claims date in the bankruptcy
matter had been identified as before this Court's resolution,
so of course if you're a party to the settlement agreement
where you are agreeing to release your claims and you don't
know if that is going to be final or not, it would have been
really unfortunate, had that date passed and then been cut out
and then this Court ultimately potentially denying settlement.
So we insured that it would proceed in an orderly fashion so
that these class members, to the extent that the Court
ultimately doesn't grant final approval, which we hope that you
do, that they would have the ability to protect their rights
within the bankruptcy, and file a claim there.

The next step is on the ultimate assignment of the
underlying contract.  If we go back to the beginning and look
at the disputes about you got these physician practices, you
have these underlying contracts with ECL to provide these
medical records, software services or billing services, and
those are the services at issue --

**THE COURT:**  Slow down.

**MR. SPAUGH:**  -- and what gives rise to the entire
dispute.  And of course we have the patients of those
practices.

Now, those practices -- the rights that they have
through the settlement agreement are not just they are going to
get a payment from the physician settlement fund.  It is also

1  that they are going, to the extent they are still under

2  contract as of last year when the agreement was entered into,

3  they received contractual credits towards their account.  They

4  would also receive the right to terminate the agreements.  They

5  would also receive a number of other nonmonetary provisions and

6  relief therein.

7           In addition to that, ECL has an ongoing obligation as

8  a part of this litigation, to maintain its books and records.

9  Well, what we did was, we had to object, because they were

10  going to proceed with the sale, and the buyer was taking the

11  position that we get the contracts with none of the attachments

12  of the settlement agreement.  So essentially, it would have

13  left the settlement class with no rights under the settlement

14  agreement except as to the defendants, who at that point, don't

15  have the contracts provide the credits.  They don't have the

16  contracts, or the termination right doesn't matter.  It's been

17  assigned.

18           So one of our attorneys, a partner and colleague out

19  of New York, he flew down to Dallas multiple times to attend

20  contested evidentiary hearings, cross-examine multiple

21  witnesses, and ultimately as a result of his efforts, we were

22  able to secure language in the sale order that insured that

23  those settlement rights would transfer with the contracts.  So

24  that was really important.

25           Aside from those components, the only other real

1  impact of the bankruptcy was delay, frankly, in getting to this

2  point.

3          I am happy to answer any other questions the Court

4  has about the bankruptcy, but those are the real issues that

5  we've identified.

6          **THE COURT:**  It was my understanding that the

7  bankruptcy wasn't going to mess with the insurance proceeds

8  coming over under the settlement, but the noncash part benefits

9  to the physician class were a problem, and then the risk to

10  both classes, if for some reason the settlement wasn't

11  approved.  So you all took care of all that and you got the

12  full benefit of the settlement agreement with the buyer?

13          **MR. SPAUGH:**  Yes, Your Honor.  The settlement

14  agreement will be honored by every one involved in the

15  bankruptcy, and all the provisions will still be fully

16  enforced.

17          **THE COURT:**  Okay.

18          **MR. SPAUGH:**  Your next question was about Colorado

19  Bankers Life Insurance and their involvement.  So they are one

20  of the entities that is in rehabilitation by the State of North

21  Carolina.  They are one of the plaintiffs of the underlying

22  lawsuits against Greg Lindberg and his related entities that

23  resulted in the memorandum of understanding.  They are a party

24  to that memorandum of understanding that requires that all of

25  the defendant's assets be transferred essentially to them,

excluding the insurance proceeds at issue here.  So they are
recipients of those proceeds, and that is the order that the
superior court judge in North Carolina ordered specific
performance of, and then also entered a temporary restraining
order in the action where they are plaintiff.

So they are fully in the midst of getting money there
and that's why they are so protective against, I think,
anything that could count against that.  They are trying to
make sure that they get a recovery themselves.

**THE COURT:**  I mean, yeah, they want to protect the
insureds.

**MR. SPAUGH:**  Exactly.

**THE COURT:**  And ended up in a pretty untenable
position.

**MR. SPAUGH:**  That's right.  I do want to go back to
the bankruptcy for one second, Your Honor.  I don't know if
this is in the record for our pleadings, but the Court could
likely take judicial notice of it, but the next sale proceeds
are expected to be approximately 13.2 million dollars in the
bankruptcy sale.  The topline number was 14.5 million, but it
is subject to certain deductions, and of those 13.2 million
dollars, there are secured creditors who have liens on ECL's
assets, defendant's assets, that far exceed that amount.

So what that means is, to be clear, just because
there is a sale in bankruptcy that results in 13.2 million

1  dollars on ECL, it is not as though that money is now available

2  to go to the class members.

3        **THE COURT:**  Because they are all unsecured?

4        **MR. SPAUGH:**  Correct.  So the only relief that they

5  are going to obtain is if the unsecured creditors are able to

6  work out a negotiation in some settlement, but that's not

7  required and hasn't happened, and that's why the settlement

8  agreement is so important for the class members.

9        **THE COURT:**  Okay.

10        **MR. SPAUGH:**  The next question that I think you had

11  as to the physician settlement class is, how much can each

12  member expect to receive.

13        **THE COURT:**  I know there is no way to calculate that

14  with precision but, you know, just kind of a rough idea.

15        We can be fairly precise based off the claims to

16  date, but the ultimate claim submission deadline, as the Court

17  notes is, July 24th, so it is possible that there could be

18  additional claims submitted by then.

19        I will note in the month since -- approximate month

20  since the declaration by the settlement administrator, there

21  have not been any additional claims, because most of those

22  claims were operating under the pre-bankruptcy timeline that we

23  got to get this thing in, you know, around March or so.

24        There have been 199 claims to date.  The physician

25  settlement class fund amount is $1,460,449.50.  If the Court

were to approve the attorneys' fees, expenses, service awards
and settlement administrative expenses, administration
expenses, and deduct that amount from the 1.46 million, that
leaves $647,228.05. If you divide that by the 199 claims to
date, that results in approximately $3,252.40 per claim to each
physician settlement class member who submits a valid claim.

Baked into that number is, some information that the
Court also requested separately and that was information about
the administration cost to date. That information is not in
the record, however, we conferred, and we would be happy to
work with the settlement administrator and provide a supplement
declaration, at the Court's request, or to help the Court on
the specific numbers that I'm about to provide you.

So the total cost to date of the settlement
administrator are $329,622.71. And that's broken out by -- for
the patient class, $230,000 -- $230,348.37.

And for the physician class, $99,274.34. The
estimated future costs are a total of $189,131.87, broken down
for the patient class as $156,104.23.

For the physician class, as $33,027.64. So what that
results in, Your Honor, is a total estimated administration
cost for both classes of $518,754.58, broken down as for the
patient class, $386,452.60.

For the physician class, $132,301 --

**THE COURT:** Slow down with the numbers.

1          **MR. SPAUGH:**  $132,301.98.

2          **THE COURT:**  I mean, a fairly expensive

3   administration, in my experience.

4          **MR. SPAUGH:**  I think that is fair, Your Honor.  I

5   note the discrepancy between the patient and physician class,

6   and I think that's warranted and reasonable here, given that

7   the size of the patient class is massive.

8          **THE COURT:**  Right.  All of that was done -- all of

9   the patient notice was via email?

10         **MR. SPAUGH:**  That's correct, Your Honor.

11         **THE COURT:**  It wasn't like there were first class

12  mailing costs or even postcards.

13         **MR. SPAUGH:**  No.  There were 492 mailings.

14         **THE COURT:**  So it would have been data management of

15  the transfer -- well, I guess Ms. Martin can speak, but from

16  the defendant to the settlement administrator and converting

17  that.

18         **MR. SPAUGH:**  Right.  I think that's why the

19  settlement administrator -- I think if you were to ask them,

20  they were a little frustrated in the way in which some of the

21  information was conveyed to them by the defendant ECL, who had

22  the records.

23         **THE COURT:**  I've been dealing with data from the

24  receivership for a while and in various contexts, and Mr.

25  Nelson and his partners and others who have been telling me for

1 awhile about those difficulties, so you don't have to explain
2 any further.
3          **MR. SPAUGH:**  Right.  I do think that's the
4 explanation for why there is so many costs already to date,
5 when they haven't actually started cutting the checks process.
6          **THE COURT:**  Because they are going to have to mail
7 those.
8          **MR. SPAUGH:**  Right.  But it is because they had a lot
9 of data that they had to comb through to identify the class
10 members and the valid addresses and there was a lot of work
11 involved in that process.
12          For the patient class as well on the future costs,
13 Ms. Martin can speak to that more so, but there is going to be
14 a more verification process involved and out-of-pocket cost
15 determination, whereas for the physician class it is just you
16 divide it up and everybody gets an equal amount.
17          Let me see if there are any other questions that you
18 had.  You also asked about money left from uncashed checks.
19 All money will ultimately be distributed to the class, is my
20 understanding.
21          **THE COURT:**  So if there is uncashed checks, you just
22 propose to send out a second round of checks to the people who
23 did cash them?
24          **MR. SPAUGH:**  I think we can work through that.  I
25 refer to Ms. Martin on that specific issue.

1          **MS. MARTIN:** Yes, Your Honor. What we've done in

2  other settlements is, if there is enough after uncashed

3  checks -- there is a pot. If there is at least a five dollar

4  amount per person, then it makes sense to do another

5  distribution. The settlement administrator works with us to

6  make that determination as to, like, you know, where is our net

7  zero dollar, where it makes sense.

8          If we have monies that are de minimis and so not

9  worth trying to go another round of distribution, then I think

10 what we would ask is to come back to the Court with a cy pres

11 recommendation for the Court's approval, but particularly on

12 the patient settlement class side, since one of the claims,

13 which has been the majority that people have requested at this

14 time, is a pro rata share of the fund.

15         We expect there to be minimal left in the fund,

16 particularly since people have to claim-in for that. We expect

17 that if they are going through the effort of making that claim,

18 that they are going to go through the effort of cashing that

19 check, and a lot of them will -- I mean, the class has the

20 option to request digital payment, which has become quite

21 prevalent.

22         **THE COURT:** Saves a lot of money.

23         **MS. MARTIN:** Saves a lot of money, but also in a

24 consumer class, which is patient classes, individuals, it is

25 very well-appreciated, because a lot of people do not have

banking relationships, or it is just harder to get a check
cashed than to just have their money go directly into Venmo.
So we do think that amount will be small, but we do expect that
if it is beyond secondary distributions, that we would come
back to the Court to ask for a cy pres distribution.

**THE COURT:** How many claims have you gotten?

**MS. MARTIN:** Currently, we have 8,904 claims, and of
those, 178 are for out-of-pocket expenses. The remainder are
for the pro rata share of the net settlement fund.

**THE COURT:** Okay.

**MS. MARTIN:** I know one of your questions is, you
know, an estimate of what people will receive. If you take the
178 claims, if they were all to be paid at the $5,000 cap --

**THE COURT:** Which might or might not happen, but,
yeah, it could.

**MS. MARTIN:** I think it is a good bet it is better
than Vegas odds for us, but if all of those 178 claims were
paid at $5,000, then we would be looking at pro rata
distribution to the remainder of the class at $53.

In ordinary settlements, the trend is for the
out-of-pocket expenses, typically about only 25 percent of
those claims are deemed valid. If you use the 25 percent here
and still pay those at the maximum $5,000 amount, then we are
looking at a distribution of $127.62.

**THE COURT:** That's going to be part of the claim

1  administrator's job?

2          **MS. MARTIN:**  That would be part of the claims

3  administration's jobs.  If none of those out-of-pocket claims

4  were valid, and all of the 8,904 claims were adjudicated as the

5  pro rata distribution, we would be looking at a distribution of

6  $151.97 per person.  So again, we're looking at some range

7  between $53 and $151 for the class, just based on current

8  claims amount, but that's a good estimate for us today.

9          **THE COURT:**  Okay.  Great.  Thank you.

10          **MR. SPAUGH:**  The last note that I have collectively

11  and on behalf of the physician settlement class is, just to

12  confirm that we checked with the settlement administrator, and

13  since the objection deadline, there have been no late

14  submissions or any objections, so as of today, since the notice

15  process began in November, there have been no objections to the

16  proposed settlement.

17          I think the final question Your Honor had was how

18  many of the email notices to patient settlement class members

19  bounce-back, and I'll leave that to Ms. Martin.

20          **THE COURT:**  Okay.

21          **MS. MARTIN:**  Yes, Your Honor.  So of the six million

22  emails that went out, 16 percent were deemed invalid,

23  undeliverable or bounced back, and so that meant that we had an

24  84 percent direct notice reach.

25          **THE COURT:**  That's pretty good.

 1          **MS. MARTIN:**  And then we supplemented with digital

 2   notice, and with the digital notice supplement it is estimated

 3   that the reach rate was at least 93 percent overall, but we

 4   have 84 direct notice and we were very pleased with that

 5   amount.

 6          **THE COURT:**  That's pretty good.  Okay.  Let's see.

 7   Hold on.  Let me just look through my questions.

 8          The expenses incurred, which were primarily mediation

 9   fee associated -- the patient settlement class motion, I think,

10   said you requested attorneys' fees of one-third, and you gave

11   an amount, whatever it was, inclusive of the expenses.  So you

12   are not asking for a separate award of the expenses?

13          **MS. MARTIN:**  Correct, Your Honor.  I think you kindly

14   helped facilitate us using Judge Auld as mediator, and that

15   kept expenses down.

16          Also, because we went into the bankruptcy and were

17   able to secure a seat on the unsecured creditor's committee, we

18   did not have the expense of bankruptcy counsel.

19          We were fortunate, due to a relationship that my firm

20   has, we had outside bankruptcy counsel who assisted us in this

21   matter for no fee, just trying to help us with the class to

22   give us some extra guidance, and we think with both the

23   physician class and the patient class having seats on the

24   unsecured creditors committee and having external forces, that

25   facilitated us to move so quickly to get the stay lifted.

1    That's a long way to say, Your Honor, that, yes, the

2 expenses, we are not asking for additional expenses, again,

3 because we understand that this is a limited fund and we want

4 enough to go to the class.

5    **THE COURT:** I can't remember -- I didn't write down

6 what the physician class is requesting about expenses.

7    **MR. SPAUGH:** Yes, Your Honor. The amount we

8 requested in expenses is $4,102.97, and that is on top of the

9 requested 33 percent of the physician settlement.

10    **THE COURT:** You-all's lodestar multiplier is lower

11 than the patient class. You are going to be lucky to come out

12 even. I'm not sure you are going to come out even, based on

13 what -- I don't think you gave me your actual hourly rate. You

14 only gave me your effective hourly rate in your motion. My

15 guess is, that that's lower than your actual hourly rate for

16 most of your lawyers.

17    **MR. SPAUGH:** I can't be certain, but I think it is

18 similar, but it is not that big of a discrepancy. But, yes, we

19 are nearing the breakeven point.

20    **THE COURT:** Near the breakeven point. That's what I

21 was guessing. All right.

22    What does ECL want to tell me?

23    **MR. NELSON:** I think we've answered all of the

24 questions. I'm happy to answer anything else that the Court

25 has, but I understood that all of the questions had been

1 answered.

2       **THE COURT:** I think so. And I guess your client is

3 still all tied up with Colorado Bankers Life Insurance, amongst

4 others.

5       **MR. NELSON:** As Your Honor pointed out, there is

6 still a lot of litigation happening in lots of places.

7       **THE COURT:** Yes, in lots of places. Does ECL have

8 other -- I mean, I guess that is all taken care of in the

9 bankruptcy.

10       **MR. NELSON:** Yes, in the bankruptcy.

11       **THE COURT:** So I don't have to worry about any of

12 that.

13       **MR. NELSON:** Correct.

14       **THE COURT:** Correct. Thank you.

15       So I think my only real issue, and I just want to

16 talk about the two insurance policies that have been assigned

17 to the physician class. So what I think I would ask -- what I

18 would want to do, subject to you all telling me there is a

19 better way, just to be sure I'm meeting my fiduciary

20 obligations to the class, would be to require you to come back

21 and tell me about any settlement that you propose to reach with

22 either of those two insurance companies, and I would, of

23 course, try to keep your expenses down. I mean, I just want

24 you -- I basically just want you to tell me a little about it,

25 and then if I had some question or concern, you know, we could

1  go into it a little bit further, but I think I probably have a
2  fiduciary obligation to your class to be sure that any
3  settlement reached with those insurance companies is fair and
4  reasonable.
5          **MR. SPAUGH:**  That sounds good, Your Honor.  So to
6  confirm, we still anticipate that there will be a judgment in
7  this action --
8          **THE COURT:**  Yes.  Absolutely.
9          **MR. SPAUGH:**  -- and the Court will retain
10 jurisdiction for purposes of enforcing the settlement
11 agreement, and that's where we come in.
12         **THE COURT:**  Yes.  This would be final as to your
13 agreement.  You know, if down the road -- now if you get a
14 verdict against them, I think it happens automatically because
15 of what I would be approving, it says you get a third, and the
16 class members get pro rata, and there is really nothing -- I
17 mean, it is not a settlement, so I don't have to approve it.
18 But if it is a settlement, that would be the part where I would
19 just want you to come back and run it by me.
20         **MR. FERGUSON:**  Your Honor, it is my understanding --
21 and there is a lot of unknowns there, that if it did end up
22 being in Indiana, or some other delightful place, we could come
23 and seek relief from that order?
24         **THE COURT:**  Absolutely.  I'm not going to be a jerk
25 about it.  I just got a little uncomfortable at no court

oversight of that. I'm positive counsel and these class
representatives seem to have been very, very responsible. You
know, I'm sure you all would do something reasonable, I just
think I'm supposed to look at it to confirm that. I don't
really have any doubts. You all aren't going to sell them out.
You know, you're motivated to get as much money as you can, and
I appreciate that.

I'm sure you also want to get some money, and I don't
know anything about the insurance policy. When I was in state
court, I had a rule about reading appellate decisions if there
was an uninsured or underinsured motorist coverage case, I did
not read it, because they were so awful. I don't really have
that same view about insurance policies in general, but not my
favorite thing. That's okay. Get them all the time. All
right.

Well, I think with that, you know, just so long as
that is clear, I'm not going to have any problem with this.
Now I'm going to try to get this order out quickly, but I'm
going on vacation Thursday, and I'm going to be gone two weeks,
and I just don't know for sure if I'm going to get it out
before I leave. I'm going to try. It is, like, I don't know,
thirty some odd pages long because, you know, this is by far
the most complex class action settlement I have seen, and I've
done, I don't know, ten of them, maybe in the last six or seven
years. I'm just guessing. I don't really know. Maybe more.

1       This one pretty complicated, and I know it is the

2  first no opt-out one that I've seen, but I definitely think it

3  is fair and very reasonable and benefits the class.  They get

4  everything they could have gotten, really, and more than if you

5  had litigated it, so that all looks fine.

6       Attorneys' fees, I had no problem with.  That seemed

7  very reasonable and in line.  I just approved another one last

8  week, so I recently looked at hourly rates for the lodestar

9  comparison and, you know, had no problems with any of that and

10 just everything about this has been complicated for you-all,

11 and for me, which is why the order is going to be so long,

12 because I think I have to explain it all.

13      The Fourth Circuit likes it when I explain.  I don't

14 think anybody is going to appeal but, you know, you just never

15 know what is going to happen, and I want the record to reflect

16 the careful consideration I have given it, because I have spent

17 a lot of time with it, being sure I understand it.  It looks

18 entirely appropriate to me, and all of the requirements of Rule

19 23 are met.

20      The notice meets the due process standard, and I will

21 enter more detailed factual findings in the order.

22      Anybody have anything else they want to tell me?

23      **MS. MARTIN:**  Yes, Ma'am, just two quick points.

24 Number one, I think on behalf of all of us, I want to say thank

25 you for the questions.  I understand -- I know that's your

1  normal practice, and it does really help us as practitioners.

2  We get so bogged down and we look at certain details, but it is

3  always helpful when the court let's us know ahead of time

4  certain details that we need to make sure, so thank you for

5  that.

6         Number two, I would be remise if I didn't say on the

7  record, that although all of us sitting here came in

8  adversarial representing our parties, you know, being advocates

9  for our clients.  When the settlement was reached, we all had

10 one goal in trying to get it finalized and to get payment to

11 the class members, and particularly with the difficulty of the

12 interceding bankruptcy.

13        Again, I would be remise if I didn't just say that I

14 appreciate the professionalism that we've had from Womble, Bond

15 and from Fox, Rothchild, all of us working together trying to

16 be one voice, trying to be on the same side trying to get this

17 through, and that's greatly appreciated.

18        It is not always seen, but it is greatly appreciated

19 here through this complex matter and difficulty, and it went as

20 smoothly as it did because of the professionalism that we had,

21 again, every one being zealous advocates for their clients, but

22 recognizing what the settlement that we had one goal, and I

23 just wanted to acknowledge that.

24        **THE COURT:**  Thank you, Ms. Martin.

25        **MR. SPAUGH:**  I'll echo Ms. Martin's comments, and

appreciate the Court's vision in enabling the physician

settlement class, which was in front of another judge, to come

and participate in the ordered judicial settlement conference,

and the consolidation, which enabled us to reach this complex

class action settlement, and also to Fox, Rothchild for not

wasting the entire insurance policy before we got here.

**THE COURT:** Anything to add, Mr. Nelson?

**MR. NELSON:** No, Your Honor.

**THE COURT:** I think you all have done a great job, in

case I haven't made that clear. You went into it early trying

to settle it, and it was pretty complicated, so I'm going to

try to do my part to -- I've tried to move it along as quickly

as I can at every stage, and if I can get it out before I go

away for a couple of weeks, I will. Otherwise, you'll get it

mid July. I know you would like it as soon as possible, and I,

too, would like it gone as soon as possible. I'll get that out

to you as quickly as I can.

I appreciate you-all's professionalism and

collegiality and flexibility with me about scheduling things.

**MR. SPAUGH:** I do have one final matter. Did the

Court need a supplemental declaration?

**THE COURT:** No, I don't think so. You-all got the

numbers from the settlement administrator and you reported them

to me.

When I first started doing these settlements, I

1   approved the administration fees.  In the last three or four,

2   it has been not done that way, you know, they've been basically

3   approved by counsel.  I always like to ask them about, and I've

4   now seen, you know, a lot of them, so I don't think I need

5   those details.

6           I'll probably just say something in the order like

7   you reported on them to me and they were reasonable.  So

8   somebody can pay for a transcript if they want to know more.

9   Okay.

10          Anything else?  Thank you.  Court is adjourned.

11          (Court adjourned at 10:50 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

**C E R T I F I C A T E**

2

3          I, J. ALLEN, RPR, United States District Court Reporter

4     for the Middle District of North Carolina, DO HEREBY CERTIFY:

5          That the foregoing is a true and correct transcript of

6     the proceedings had in the above-entitled matter.

7

8

9     June 27, 2024

10                    *J. ALLEN*

11                    J. Allen, RPR
                      United States Court Reporter
12                    324 W. Market Street
                      Greensboro, NC  27401
13

14

15

16

17

18

19

20

21

22

23

24

25

MR. FERGUSON: **[2]**   3/14 28/20
MR. NELSON: **[6]**   3/21 26/23 27/5 27/10 27/13 32/8
MR. SPAUGH: **[41]**
MS. MARTIN: **[11]**   3/10 22/1 22/23 23/7 23/11 23/16 24/2 24/21 25/1 25/13 30/23
MS. WHITE: **[1]**   3/8
THE COURT: **[61]**

**$**

**$1,460,449.50** **[1]**   18/25
**$127.62** **[1]**   23/24
**$132,301** **[1]**   19/24
**$132,301.98** **[1]**   20/1
**$151** **[1]**   24/7
**$151.97** **[1]**   24/6
**$156,104.23** **[1]**   19/19
**$189,131.87** **[1]**   19/18
**$230,000** **[1]**   19/16
**$230,348.37** **[1]**   19/16
**$3,252.40** **[1]**   19/5
**$329,622.71** **[1]**   19/15
**$33,027.64** **[1]**   19/20
**$386,452.60** **[1]**   19/23
**$4,102.97** **[1]**   26/8
**$400,000** **[1]**   6/19
**$5,000** **[3]**   23/13 23/18 23/23
**$518,754.58** **[1]**   19/22
**$53** **[2]**   23/19 24/7
**$647,228.05** **[1]**   19/4
**$99,274.34** **[1]**   19/17

**1**

**1.46** **[1]**   19/3
**10:00** **[1]**   2/2
**10:50 a.m** **[1]**   33/11
**11** **[1]**   13/16
**13.2** **[3]**   17/19 17/21 17/25
**14.5** **[1]**   17/20
**16 percent** **[1]**   24/22
**178** **[3]**   23/8 23/13 23/17
**199** **[2]**   18/24 19/4
**1:22V468** **[1]**   1/3

**2**

**2024** **[2]**   1/6 34/9
**22CV468** **[1]**   2/4
**23** **[1]**   30/19
**24** **[1]**   1/6
**24th** **[1]**   18/17
**25** **[1]**   23/21
**25 percent** **[1]**   23/22
**27** **[1]**   34/9
**27401** **[1]**   34/12

**3**

**324** **[1]**   34/12
**33** **[4]**   6/9 8/4 8/12 26/9
**332-6033** **[1]**   1/22
**336** **[1]**   1/22

**4**

**492** **[1]**   20/13

**5**

**5,000** **[1]**   10/20

**6**

**6033** **[1]**   1/22

**8**

**8,904** **[2]**   23/7 24/4
**84** **[2]**   24/24 25/4

**9**

**93** **[1]**   25/3

**A**

**a.m** **[2]**   2/2 33/11
**ability** **[1]**   14/11
**able** **[5]**   6/25 7/6 15/22 18/5 25/17
**about** **[26]**   3/3 4/9 4/13 8/16 11/15 12/18 14/15 16/4 16/18 19/8 19/13 21/1 21/18 23/21 26/6 27/11 27/16 27/21 27/24 28/25 29/9 29/10 29/13 30/10 32/19 33/3
**above** **[1]**   34/6
**above-entitled** **[1]**   34/6
**absent** **[1]**   11/12
**absolutely** **[5]**   6/3 9/22 10/17 28/8 28/24
**accepting** **[1]**   11/8
**account** **[1]**   15/3
**acknowledge** **[1]**   31/23
**action** **[16]**   1/3 2/7 2/16 5/6 5/21 5/22 8/3 8/9 8/18 9/25 12/11 13/2 17/5 28/7 29/23 32/5
**actual** **[2]**   26/13 26/15
**actually** **[3]**   6/11 6/15 21/5
**add** **[2]**   9/14 32/7
**added** **[1]**   9/7
**addition** **[2]**   7/25 15/7
**additional** **[4]**   9/7 18/18 18/21 26/2
**addresses** **[1]**   21/10
**adequate** **[1]**   7/18
**adjourned** **[2]**   33/10 33/11
**adjudicated** **[1]**   24/4
**administration** **[5]**   19/2 19/9 19/21 20/3 33/1
**administration's** **[1]**   24/3
**administrative** **[1]**   19/2
**administrator** **[8]**   18/20 19/11 19/15 20/16 20/19 22/5 24/12 32/23
**administrator's** **[1]**   24/1
**admit** **[1]**   12/19
**advanced** **[1]**   7/3
**adversarial** **[1]**   31/8
**advocates** **[2]**   31/8 31/21
**affect** **[1]**   12/16
**afraid** **[1]**   9/20
**after** **[3]**   8/13 13/24 22/2
**again** **[7]**   4/17 7/10 10/3 24/6 26/2 31/13 31/21
**ago** **[1]**   11/4
**agree** **[1]**   6/19
**agreeing** **[1]**   14/4
**agreement** **[18]**   2/20 6/8 6/9 8/10 11/19 13/18 13/19 13/21 14/3 14/24 15/2 15/12 15/14 16/12 16/14 18/8 28/11 28/13
**agreements** **[1]**   15/4
**ahead** **[2]**   12/14 31/3
**aided** **[1]**   1/25
**air** **[1]**   12/9
**all** **[49]**
**all's** **[2]**   26/10 32/18
**Allen** **[4]**   1/22 34/3 34/10 34/11

**A**

alone [1]  6/10
along [2]  11/11 32/12
already [5]  7/18 7/25 9/6 10/3 21/4
also [10]  14/25 15/4 15/5 17/4 19/8 21/18
22/23 25/16 29/8 32/5
although [1]  31/7
always [3]  31/3 31/18 33/3
am [3]  7/8 10/7 16/3
among [1]  4/9
amongst [1]  27/3
amount [14]  7/21 9/5 9/7 17/23 18/25 19/3
21/16 22/4 23/3 23/23 24/8 25/5 25/11
26/7
amounts [1]  7/24
another [5]  3/13 22/4 22/9 30/7 32/2
answer [4]  3/2 4/15 16/3 26/24
answered [2]  26/23 27/1
answers [2]  2/10 3/17
anticipate [2]  11/24 28/6
anticipation [1]  11/14
any [24]  2/10 2/18 2/23 6/10 7/11 7/11
7/20 9/7 10/24 10/25 11/14 11/25 13/17
16/3 18/21 21/2 21/17 24/14 27/11 27/21
28/2 29/5 29/17 30/9
anybody [2]  30/14 30/22
anything [10]  4/1 4/15 7/25 12/8 17/8
26/24 29/9 30/22 32/7 33/10
apologize [1]  13/9
appeal [1]  30/14
APPEARANCES [1]  1/13
appellate [1]  29/10
applicably [1]  4/19
appreciate [4]  29/7 31/14 32/1 32/18
appreciated [3]  22/25 31/17 31/18
appropriate [3]  8/4 9/24 30/18
approval [17]  1/11 2/6 4/6 4/24 5/2 5/6
6/6 6/10 7/3 8/3 9/16 11/13 11/22 13/20
13/25 14/10 22/11
approve [8]  2/18 7/23 9/1 9/20 10/10
10/19 19/1 28/17
approved [7]  6/23 9/25 11/19 16/11 30/7
33/1 33/3
approves [1]  6/8
approving [5]  6/8 7/1 10/3 11/8 28/15
approximate [1]  18/19
approximately [2]  17/19 19/5
are [55]
aren't [1]  29/5
around [1]  18/23
as [42]
Aside [1]  15/25
ask [6]  6/15 20/19 22/10 23/5 27/17 33/3
asked [3]  4/4 4/19 21/18
asking [2]  25/12 26/2
assets [4]  13/16 16/25 17/23 17/23
assigned [5]  4/25 5/17 6/22 15/17 27/16
assignment [4]  8/25 9/11 11/18 14/13
assisted [1]  25/20
associated [1]  25/9
assume [2]  7/6 13/21
at [30]  2/2 3/2 4/6 7/5 7/19 8/2 11/15
12/23 14/15 14/18 15/14 17/1 19/12 22/3
22/13 23/13 23/18 23/18 23/19 23/23 23/24
24/5 24/6 25/3 28/25 29/4 30/8 31/2 32/13
33/11
attachments [1]  15/11
attend [1]  15/19
attended [2]  11/20 11/21

**B**

attending [1]  13/7
attorney's [1]  2/19
attorneys [2]  10/16 15/18
attorneys' [7]  4/24 6/15 7/1 7/12 19/1
25/10 30/6
Auld [1]  25/14
automatically [1]  28/14
available [1]  18/1
award [1]  25/12
awards [1]  19/1
away [2]  32/14
awful [1]  29/12
awhile [1]  21/1

**B**

back [10]  7/10 9/16 14/14 17/15 22/10
23/5 24/19 24/23 27/20 28/19
Baked [1]  19/7
Banker [1]  4/22
Bankers [3]  13/13 16/19 27/3
banking [1]  23/1
bankruptcy [21]  12/16 12/20 12/22 13/17
13/24 14/1 14/12 16/1 16/4 16/7 16/15
17/16 17/20 17/25 18/22 25/16 25/18 25/20
27/9 27/10 31/12
bar [1]  13/23
based [3]  18/15 24/7 26/12
basically [2]  27/24 33/2
be [61]
because [30]  5/17 5/21 6/5 6/20 6/25 8/7
8/12 8/16 11/2 11/18 12/3 12/6 12/10
13/18 14/1 15/9 17/24 18/3 18/21 21/6
21/8 22/25 25/16 26/3 28/14 29/12 29/22
30/12 30/16 31/20
become [1]  22/20
been [25]  2/4 2/5 3/12 5/10 5/20 6/25
7/24 14/2 14/5 14/6 15/16 18/21 18/24
20/14 20/23 20/25 22/13 24/13 24/15 26/25
27/16 29/2 30/10 33/2 33/2
before [7]  1/11 7/17 9/16 14/2 29/21 32/6
32/13
began [1]  24/15
beginning [1]  14/14
behalf [12]  1/3 2/8 3/11 3/15 6/19 6/21
7/12 8/14 12/19 13/10 24/11 30/24
being [10]  4/8 4/19 5/7 9/19 13/9 13/15
28/22 30/17 31/8 31/21
believe [8]  5/20 6/7 7/16 7/17 10/13
10/19 12/1 12/2
benefit [1]  16/12
benefits [2]  16/8 30/3
bet [1]  23/16
better [3]  11/15 23/16 27/19
between [2]  5/22 20/5 24/7
beyond [1]  23/4
big [1]  26/18
biggest [2]  2/14 3/3
billing [1]  14/17
bit [4]  4/12 11/2 13/14 28/1
bogged [1]  31/2
Bond [4]  1/19 3/15 4/17 31/14
books [1]  15/8
both [5]  8/25 9/1 16/10 19/22 25/22
bounce [1]  24/19
bounce-back [1]  24/19
bounced [1]  24/23
breakeven [2]  26/19 26/20
broken [3]  19/15 19/18 19/22
bunch [1]  2/5

**B**

busy [1]   3/23
but [47]
buyer [5]   13/12 13/13 13/15 15/10 16/12

**C**

calculate [1]   18/13
call [1]   8/7
came [1]   31/7
can [15]   4/14 5/2 6/5 10/19 13/3 18/11
18/15 20/15 21/13 21/24 29/6 32/13 32/13
32/17 33/8
can't [2]   26/5 26/17
cap [1]   23/13
care [5]   1/7 2/4 12/6 16/11 27/8
careful [1]   30/16
CAROLINA [6]   1/1 1/6 12/10 16/21 17/3
34/4
case [4]   1/3 2/4 29/11 32/10
cases [1]   8/23
cash [1]   21/23
cashed [1]   23/2
cashing [1]   22/18
CATHERINE [1]   1/11
cause [1]   2/10
caution [1]   7/10
certain [4]   17/21 26/17 31/2 31/4
certified [1]   2/17
CERTIFY [1]   34/4
Chapter [1]   13/16
check [3]   8/7 22/19 23/1
checked [1]   24/12
checks [5]   21/5 21/18 21/21 21/22 22/3
CHIEF [1]   1/12
Circuit [1]   30/13
circumstances [1]   7/2
Civil [1]   1/3
claim [9]   6/11 8/24 14/12 18/16 19/5 19/6
22/16 22/17 23/25
claim-in [1]   22/16
claims [23]   2/15 5/7 5/10 5/14 13/23 14/1
14/4 18/15 18/18 18/21 18/22 18/24 19/4
22/12 23/6 23/7 23/13 23/17 23/22 24/2
24/3 24/4 24/8
class [84]
classes [7]   2/13 5/14 8/24 12/20 16/10
19/22 22/24
classes' [1]   13/10
clear [6]   8/20 11/2 13/17 17/24 29/17
32/10
client [2]   8/24 27/2
clients [2]   31/9 31/21
colleague [1]   15/18
collectively [2]   9/18 24/10
collegiality [1]   32/19
Colorado [4]   4/21 13/13 16/18 27/3
comb [1]   21/9
come [10]   12/5 22/10 23/4 26/11 26/12
27/20 28/11 28/19 28/22 32/2
comes [1]   5/16
coming [4]   4/24 7/21 9/16 16/8
comments [1]   31/25
committee [3]   13/6 25/17 25/24
companies [4]   2/16 2/19 27/22 28/3
company [2]   8/25 10/7
comparison [1]   30/9
complex [3]   29/23 31/19 32/4
complicated [3]   30/1 30/10 32/11
components [1]   15/25

computer [1]   1/25
computer-aided [1]   1/25
concern [2]   4/23 27/25
conference [1]   32/3
conferred [1]   19/10
confidence [1]   9/23
confirm [3]   24/12 28/6 29/4
consideration [1]   30/16
consolidated [1]   2/5
consolidation [1]   32/4
consumer [1]   22/24
contested [1]   15/20
context [2]   8/4 12/20
contexts [1]   20/24
contract [2]   14/14 15/2
contracts [5]   14/16 15/11 15/15 15/16
15/23
contractual [1]   15/3
converting [1]   20/16
conveyed [1]   20/21
correct [10]   6/3 9/12 10/2 11/6 18/4
20/10 25/13 27/13 27/14 34/5
correctly [1]   2/13
cost [4]   19/9 19/14 19/22 21/14
costs [4]   19/18 20/12 21/4 21/12
could [11]   9/14 11/3 12/5 12/6 17/8 17/17
18/17 23/15 27/25 28/22 30/4
counsel [6]   4/14 11/11 25/18 25/20 29/1
33/3
count [1]   17/8
couple [2]   2/9 32/14
course [4]   2/25 14/3 14/21 27/23
court [44]
Court's [7]   7/9 11/20 11/21 14/2 19/12
22/11 32/1
cover [1]   10/23
coverage [6]   5/12 5/13 5/14 6/18 8/23
29/11
creditor's [1]   25/17
creditors [5]   13/6 13/11 17/22 18/5 25/24
credits [2]   15/3 15/15
cross [1]   15/20
cross-examine [1]   15/20
current [1]   24/7
Currently [1]   23/7
cut [1]   14/6
cutting [1]   21/5
cy [2]   22/10 23/5

**D**

Dallas [1]   15/19
data [3]   20/14 20/23 21/9
date [9]   13/23 14/1 14/6 18/16 18/24 19/5
19/9 19/14 21/4
de [1]   22/8
deadline [2]   18/16 24/13
dealing [1]   20/23
decide [1]   10/6
decision [2]   10/9 11/7
decisions [1]   29/10
declaration [3]   18/20 19/12 32/21
declaratory [2]   8/9 12/11
deduct [1]   19/3
deductions [1]   17/21
deemed [2]   23/22 24/22
defend [1]   8/18
defendant [8]   1/8 1/20 5/20 5/23 6/2 6/22
20/16 20/21
defendant's [3]   5/13 16/25 17/23

## D

**defendants [7]**  3/20 5/8 7/13 7/15 11/6
12/12 15/14
**definitely [1]**  30/2
**delay [1]**  16/1
**delightful [1]**  28/22
**denied [1]**  6/18
**denying [1]**  14/7
**detail [1]**  4/10
**detailed [2]**  4/4 30/21
**details [3]**  31/2 31/4 33/5
**determination [3]**  13/24 21/15 22/6
**determines [1]**  10/12
**Dickinson [3]**  1/19 3/15 4/18
**did [11]**  2/8 2/11 12/22 13/1 15/9 21/23
25/18 28/21 29/11 31/20 32/20
**didn't [8]**  6/15 6/24 10/25 11/3 11/5 26/5
31/6 31/13
**different [1]**  9/14
**difficulties [1]**  21/1
**difficulty [2]**  31/11 31/19
**digital [3]**  22/20 25/1 25/2
**direct [3]**  10/20 24/24 25/4
**directly [3]**  3/25 6/16 23/2
**discrepancy [2]**  20/5 26/18
**dismissed [1]**  8/10
**dispute [8]**  5/12 5/13 5/14 5/22 5/22 8/6
8/12 14/21
**disputes [1]**  14/15
**distributed [2]**  7/11 21/19
**distribution [7]**  22/5 22/9 23/5 23/19
23/24 24/5 24/5
**distributions [2]**  10/15 23/4
**DISTRICT [6]**  1/1 1/1 1/12 12/2 34/3 34/4
**divide [2]**  19/4 21/16
**divided [2]**  4/8 8/19
**DJ [1]**  8/18
**do [27]**  2/17 2/18 4/2 5/2 5/3 7/8 7/9
7/16 8/13 9/15 11/14 11/24 12/10 13/16
13/17 14/11 17/15 21/3 22/4 22/25 23/3
23/3 27/18 29/3 32/12 32/20 34/4
**does [7]**  3/25 5/1 5/5 8/3 26/22 27/7 31/1
**doesn't [5]**  5/14 6/22 9/1 14/10 15/16
**doing [4]**  7/19 9/4 9/4 32/25
**dollar [2]**  22/3 22/7
**dollars [4]**  6/17 17/19 17/22 18/1
**don't [25]**  2/10 3/2 4/2 6/5 8/22 11/1
11/25 14/4 15/14 15/15 17/16 21/1 26/13
27/11 28/17 29/4 29/8 29/12 29/20 29/21
29/24 29/25 30/13 32/22 33/4
**done [5]**  20/8 22/1 29/24 32/9 33/2
**done -- all [1]**  20/8
**doubts [1]**  29/5
**down [11]**  13/8 14/19 15/19 19/18 19/22
19/25 25/15 26/5 27/23 28/13 31/2
**drafted [1]**  7/25
**dream [2]**  6/12 6/13
**due [2]**  25/19 30/20
**Durham [1]**  12/13

## E

**each [2]**  18/11 19/5
**EAGLES [1]**  1/11
**early [1]**  32/10
**echo [1]**  31/25
**ECL [13]**  5/7 5/17 7/14 8/8 8/11 8/17
12/21 14/16 15/7 18/1 20/21 26/22 27/7
**ECL's [1]**  17/22
**effective [2]**  11/19 26/14

## E (continued right column top: efficient)

**efficient [1]**  9/19
**effort [2]**  22/17 22/18
**efforts [1]**  15/21
**either [2]**  10/13 27/22
**else [9]**  3/1 3/1 3/4 4/1 4/10 4/15 26/24
30/22 33/10
**email [2]**  20/9 24/18
**emails [2]**  2/9 24/22
**enabled [1]**  32/4
**enabling [1]**  32/1
**end [2]**  12/7 28/21
**ended [1]**  17/13
**enforced [1]**  16/16
**enforcing [1]**  28/10
**engaged [1]**  11/18
**enough [3]**  6/10 22/2 26/4
**enter [2]**  9/23 30/21
**entered [2]**  15/2 17/4
**entire [2]**  14/20 32/6
**entirely [1]**  30/18
**entities [2]**  16/20 16/22
**entitled [2]**  7/5 34/6
**entrusting [1]**  10/7
**equal [1]**  21/16
**equally [2]**  4/8 8/20
**equitably [1]**  4/8
**ESQ [5]**  1/14 1/16 1/18 1/18 1/20
**essentially [3]**  13/15 15/12 16/25
**estimate [2]**  23/12 24/8
**estimated [3]**  19/18 19/21 25/2
**even [5]**  7/5 8/2 20/12 26/12 26/12
**every [5]**  3/24 9/23 16/14 31/21 32/13
**everybody [2]**  3/5 21/16
**everything [6]**  3/4 4/3 4/10 4/12 30/4
30/10
**evidentiary [1]**  15/20
**Exactly [2]**  12/24 17/12
**examine [1]**  15/20
**examining [1]**  2/11
**example [2]**  6/6 12/25
**exceed [1]**  17/23
**except [1]**  15/14
**excluding [1]**  17/1
**expect [5]**  2/10 18/12 22/15 22/16 23/3
**expectation [1]**  11/15
**expected [1]**  17/19
**expense [1]**  25/18
**expenses [14]**  19/1 19/2 19/3 23/8 23/21
25/8 25/11 25/12 25/15 26/2 26/2 26/6
26/8 27/23
**expensive [1]**  20/2
**experience [1]**  20/3
**explain [4]**  2/21 21/1 30/12 30/13
**explanation [1]**  21/4
**extended [1]**  13/24
**extent [5]**  5/12 7/23 9/7 14/9 15/1
**external [1]**  25/24
**extra [1]**  25/22
**EYE [2]**  1/7 2/3

## F

**facilitate [1]**  25/14
**facilitated [1]**  25/25
**fact [1]**  10/20
**factual [1]**  30/21
**fair [12]**  4/11 5/4 7/18 9/2 9/6 9/8 9/10
10/11 10/12 20/4 28/3 30/3
**fairly [3]**  11/3 18/15 20/2
**fairness [1]**  10/19

## F

**familiar [1]**   7/1
**far [2]**   17/23 29/22
**FARLEY [2]**   1/3 2/3
**fashion [1]**   14/8
**favorite [1]**   29/14
**fee [4]**   2/20 7/3 25/9 25/21
**fees [10]**   2/19 4/24 5/2 6/15 7/1 7/12 19/1 25/10 30/6 33/1
**FERGUSON [2]**   1/18 3/15
**few [1]**   9/14
**fiduciary [3]**   2/12 27/19 28/2
**fight [1]**   13/22
**file [2]**   2/25 14/12
**filed [3]**   8/9 12/11 12/21
**final [9]**   1/11 2/6 13/20 13/25 14/5 14/10 24/17 28/12 32/20
**finalized [1]**   31/10
**find [1]**   12/22
**findings [1]**   30/21
**fine [3]**   8/19 10/13 30/5
**firm [2]**   3/8 25/19
**first [5]**   5/5 11/4 20/11 30/2 32/25
**five [1]**   22/3
**flew [1]**   15/19
**flexibility [1]**   32/19
**folks [1]**   2/24
**forces [1]**   25/24
**foregoing [1]**   34/5
**fortunate [1]**   25/19
**fought [2]**   11/17 11/24
**four [1]**   33/1
**Fourth [1]**   30/13
**Fox [4]**   1/20 3/21 31/15 32/5
**frankly [2]**   10/13 16/1
**free [1]**   13/17
**front [1]**   32/2
**frustrated [1]**   20/20
**full [1]**   16/12
**fully [3]**   2/11 16/15 17/6
**fund [8]**   7/18 9/5 14/25 18/25 22/14 22/15 23/9 26/3
**funds [1]**   12/23
**funny [1]**   7/2
**further [4]**   10/22 12/22 21/2 28/1
**future [4]**   5/2 6/10 19/18 21/12

## G

**gallery [1]**   11/23
**gave [3]**   25/10 26/13 26/14
**general [2]**   10/19 29/13
**get [26]**   2/23 3/5 7/4 8/15 14/25 15/11 17/9 18/23 23/1 25/25 28/13 28/15 28/16 29/6 29/8 29/14 29/18 29/20 30/3 31/2 31/10 31/10 31/16 32/13 32/14 32/16
**gets [1]**   21/16
**getting [5]**   4/7 6/4 9/16 16/1 17/6
**ghost [1]**   12/4
**give [2]**   12/4 25/22
**given [3]**   7/17 20/6 30/16
**gives [1]**   14/20
**glitched [1]**   6/5
**globally [1]**   4/19
**go [14]**   4/18 7/4 7/10 8/13 12/14 14/14 17/15 18/2 22/9 22/18 23/2 26/4 28/1 32/13
**goal [2]**   31/10 31/22
**goes [1]**   8/18
**going [38]**

**gone [3]**   7/14 29/19 32/16
**good [9]**   3/10 3/14 3/18 3/19 23/16 24/8 24/25 25/6 28/5
**gosh [1]**   9/20
**got [12]**   2/21 3/13 4/1 4/4 9/11 13/14 14/15 16/11 18/23 28/25 32/6 32/22
**gotten [2]**   23/6 30/4
**grant [2]**   13/25 14/10
**granted [1]**   13/20
**great [2]**   24/9 32/9
**greatly [2]**   31/17 31/18
**Greensboro [2]**   1/6 34/12
**Greg [1]**   16/22
**guess [5]**   6/14 20/15 26/15 27/2 27/8
**guessing [2]**   26/21 29/25
**guidance [1]**   25/22

## H

**had [25]**   2/9 4/22 12/15 14/2 14/6 15/9 18/10 20/21 21/8 21/9 21/18 24/17 24/23 25/20 26/25 27/25 29/10 30/5 30/6 30/9 31/9 31/14 31/20 31/22 34/6
**handle [2]**   4/20 4/21
**handling [1]**   9/19
**happen [3]**   2/17 23/14 30/15
**happened [2]**   12/18 18/7
**happening [2]**   12/4 27/6
**happens [2]**   8/22 28/14
**happy [3]**   16/3 19/10 26/24
**hard [2]**   11/17 11/24
**harder [1]**   23/1
**has [14]**   2/12 3/16 5/17 10/21 10/24 15/7 16/4 22/13 22/19 22/20 25/20 26/25 30/10 33/2
**hasn't [2]**   13/20 18/7
**have [77]**
**haven't [2]**   21/5 32/10
**having [2]**   25/23 25/24
**he [1]**   15/19
**hearing [3]**   4/24 11/21 11/22
**hearings [1]**   15/20
**held [2]**   10/16 10/17
**help [3]**   19/12 25/21 31/1
**helped [1]**   25/14
**helpful [2]**   12/17 31/3
**here [20]**   2/3 3/7 3/15 3/16 3/20 7/10 7/17 7/21 8/5 9/4 10/3 11/2 11/23 12/23 17/1 20/6 23/22 31/7 31/19 32/6
**HEREBY [1]**   34/4
**herself [1]**   1/3
**him [1]**   4/1
**his [4]**   3/25 15/21 16/22 20/25
**Hold [2]**   3/12 25/7
**holder [1]**   5/19
**HOLDINGS [1]**   1/7
**holds [1]**   6/21
**Honor [24]**   3/10 3/14 3/18 3/21 5/5 6/3 7/16 9/3 12/15 16/13 17/16 19/21 20/4 20/10 22/1 24/17 24/21 25/13 26/1 26/7 27/5 28/5 28/20 32/8
**HONORABLE [1]**   1/11
**honored [1]**   16/14
**hope [2]**   2/6 14/10
**hopefully [1]**   4/14
**hourly [4]**   26/13 26/14 26/15 30/8
**how [6]**   4/2 12/16 13/3 18/11 23/6 24/17
**however [1]**   19/10

## I

**I'm [23]** 3/16 6/4 6/20 7/1 8/16 11/22 19/13 26/12 26/24 27/19 28/24 29/1 29/3 29/4 29/8 29/17 29/18 29/18 29/19 29/20 29/21 29/25 32/11
**I've [10]** 3/12 3/12 4/1 4/3 6/25 20/23 29/23 30/2 32/12 33/3
**idea [4]** 6/17 6/20 11/25 18/14
**identified [3]** 13/12 14/2 16/5
**identify [1]** 21/9
**identifying [1]** 9/18
**if [44]**
**III [1]** 1/18
**illustrates [1]** 12/22
**imagine [1]** 6/16
**immediately [1]** 13/2
**impact [1]** 16/1
**important [2]** 15/24 18/8
**in [86]**
**incentivize [1]** 8/11
**incentivizes [1]** 8/13
**Inception [1]** 6/12
**inclined [1]** 7/23
**including [1]** 9/18
**inclusive [1]** 25/11
**increase [1]** 7/21
**increasing [1]** 7/19
**incredibly [1]** 4/4
**incurred [1]** 25/8
**Indiana [3]** 12/7 12/9 28/22
**individuals [1]** 22/24
**information [4]** 19/7 19/8 19/9 20/21
**initially [1]** 14/1
**ink [1]** 3/13
**insurance [25]** 2/15 2/19 4/7 4/8 4/22 4/25 4/25 5/9 5/19 8/23 8/25 10/5 10/7 11/16 13/14 16/7 16/19 17/1 27/3 27/16 27/22 28/3 29/9 29/13 32/6
**insure [1]** 13/23
**insured [3]** 5/8 14/8 15/22
**insureds [3]** 5/7 5/23 17/11
**insurers [4]** 5/11 5/15 11/21 12/12
**interceding [1]** 31/12
**interest [1]** 13/10
**interests [1]** 13/3
**interviews [1]** 13/7
**into [8]** 5/16 9/24 15/2 19/7 23/2 25/16 28/1 32/10
**introduce [1]** 3/5
**invalid [1]** 24/22
**involved [5]** 2/23 13/6 16/14 21/11 21/14
**involvement [1]** 16/19
**involving [1]** 4/1
**is [153]**
**isn't [2]** 8/6 8/23
**issue [6]** 5/1 12/23 14/18 17/1 21/25 27/15
**issues [1]** 16/4
**it [122]**
**It's [1]** 15/16
**its [4]** 5/7 5/17 13/18 15/8

## J

**J-ALLEN [1]** 34/10
**JEAN [2]** 1/14 3/10
**jerk [1]** 28/24
**job [2]** 24/1 32/9
**jobs [1]** 24/3
**judge [6]** 1/12 3/24 9/1 17/3 25/14 32/2

## 

**judgment [4]** 7/4 8/9 8/18 28/6
**judicial [2]** 17/18 32/3
**July [2]** 18/17 32/15
**July 24th [1]** 18/17
**June [2]** 1/6 34/9
**jurisdiction [2]** 5/3 28/10
**just [44]**

## K

**keep [1]** 27/23
**keeping [1]** 3/23
**kept [1]** 25/15
**KIMBERLY [1]** 1/3
**kind [7]** 3/4 6/12 6/14 8/16 12/5 12/25 18/14
**kindly [1]** 25/13
**KIP [2]** 1/20 3/21
**know [47]**
**know -- it [1]** 2/22

## L

**language [1]** 15/22
**last [6]** 11/3 15/2 24/10 29/24 30/7 33/1
**late [2]** 11/3 24/13
**lawsuit [1]** 2/25
**lawsuits [2]** 8/15 16/22
**lawyers [2]** 10/8 26/16
**lead [1]** 2/4
**LEADERS [2]** 1/7 2/4
**least [3]** 3/25 22/3 25/3
**leave [2]** 24/19 29/21
**leaves [1]** 19/4
**left [3]** 15/13 21/18 22/15
**less [2]** 6/14 8/22
**let [5]** 4/20 4/21 4/23 21/17 25/7
**let's [3]** 6/16 25/6 31/3
**liens [1]** 17/22
**Life [4]** 4/22 13/13 16/19 27/3
**lifted [1]** 25/25
**like [13]** 4/6 4/12 5/3 6/12 10/9 12/7 20/11 22/6 29/21 32/15 32/16 33/3 33/6
**like -- this [1]** 4/6
**likely [2]** 8/21 17/18
**likes [1]** 30/13
**limited [3]** 7/18 12/23 26/3
**Lindberg [2]** 3/23 16/22
**line [2]** 10/22 30/7
**LISA [2]** 1/16 3/8
**litigated [1]** 30/5
**litigation [2]** 15/8 27/6
**little [9]** 4/12 6/4 7/2 11/2 13/14 20/20 27/24 28/1 28/25
**LLC [1]** 1/7
**LLP [3]** 1/16 1/19 1/20
**located [1]** 12/12
**lodestar [2]** 26/10 30/8
**long [5]** 11/1 26/1 29/16 29/22 30/11
**look [5]** 5/3 14/14 25/7 29/4 31/2
**looked [1]** 30/8
**looking [4]** 23/18 23/24 24/5 24/6
**looks [5]** 3/1 4/5 8/2 30/5 30/17
**lot [10]** 21/8 21/10 22/19 22/22 22/23 22/25 27/6 28/21 30/17 33/4
**lots [2]** 27/6 27/7
**lower [2]** 26/10 26/15
**lucky [1]** 26/11

## M

**Ma'am [1]** 30/23

## M

made [1]   32/10
mail [1]   21/6
mailing [1]   20/12
mailings [1]   20/13
maintain [1]   15/8
majority [1]   22/13
make [3]   17/9 22/6 31/4
makes [3]   9/10 22/4 22/7
making [4]   6/20 10/8 10/9 22/17
management [1]   20/14
many [3]   21/4 23/6 24/18
March [1]   18/23
Market [1]   34/12
MARTIN [8]   1/14 3/10 4/20 20/15 21/13
  21/25 24/19 31/24
Martin's [1]   31/25
Mason [2]   1/16 3/8
massive [1]   20/7
matter [9]   2/6 9/17 9/19 14/2 15/16 25/21
  31/19 32/20 34/6
maximum [1]   23/23
may [1]   9/20
maybe [12]   3/1 4/13 4/21 6/15 7/5 8/19
  8/19 8/21 8/22 11/23 29/24 29/25
me [27]   2/21 2/22 3/5 4/5 4/11 4/15 4/16
  4/23 5/1 11/1 12/5 20/25 21/17 25/7 26/13
  26/14 26/22 27/18 27/21 27/24 28/19 30/11
  30/18 30/22 32/19 32/24 33/7
mean [9]   2/20 3/24 6/1 17/10 20/2 22/19
  27/8 27/23 28/17
means [1]   17/24
meant [1]   24/23
mediation [1]   25/8
mediator [1]   25/14
medical [1]   14/17
meeting [1]   27/19
meets [1]   30/20
member [2]   18/12 19/6
members [11]   4/9 7/25 9/6 10/15 14/9 18/2
  18/8 21/10 24/18 28/16 31/11
memorandum [2]   16/23 16/24
mentioned [1]   8/4
mess [1]   16/7
met [1]   30/19
method [2]   8/5 10/4
mid [1]   32/15
MIDDLE [3]   1/1 12/2 34/4
midst [1]   17/6
might [6]   2/22 10/10 11/15 11/16 23/14
  23/14
million [7]   6/17 17/19 17/20 17/21 17/25
  19/3 24/21
mind [1]   13/19
minimal [1]   22/15
minimis [1]   22/8
minute [1]   11/1
money [14]   2/23 4/7 4/7 4/8 8/13 17/6
  18/1 21/18 21/19 22/22 22/23 23/2 29/6
  29/8
monies [1]   22/8
month [2]   18/19 18/19
moot [1]   12/6
more [8]   4/12 7/5 21/13 21/14 29/25 30/4
  30/21 33/8
Morgan [4]   1/15 1/15 3/11 3/11
morning [4]   3/10 3/14 3/18 3/19
most [6]   7/19 8/15 9/18 18/21 26/16 29/23
motion [2]   25/9 26/14

motivated [1]   29/6
motorist [1]   29/11
move [2]   25/25 32/12
movie [1]   6/12
Mr [3]   4/21 20/24 32/7
Mr. [1]   3/23
Mr. Lindberg [1]   3/23
Ms [2]   4/20 21/25
Ms. [6]   2/8 20/15 21/13 24/19 31/24 31/25
Ms. Martin [4]   20/15 21/13 24/19 31/24
Ms. Martin's [1]   31/25
Ms. Winchester [1]   2/8
much [4]   3/12 4/5 18/11 29/6
multiple [2]   15/19 15/20
multiplier [1]   26/10
my [16]   2/8 2/14 3/13 4/15 4/18 16/6 20/3
  21/19 25/7 25/19 26/14 27/15 27/19 28/20
  29/13 32/12

## N

nature [1]   7/18
NC [1]   34/12
Near [1]   26/20
nearing [1]   26/19
necessarily [1]   9/8
need [4]   2/23 31/4 32/21 33/4
negotiating [1]   6/18
negotiation [1]   18/6
negotiations [1]   11/18
NELSON [5]   1/20 3/21 4/21 20/25 32/7
net [2]   22/6 23/9
never [1]   30/14
New [1]   15/19
next [7]   6/16 12/15 13/12 14/13 16/18
  17/18 18/10
no [18]   1/3 5/5 6/16 6/20 9/22 10/21
  15/13 18/13 20/13 24/13 24/15 25/21 28/25
  30/2 30/6 30/9 32/8 32/22
noncash [1]   16/8
none [2]   15/11 24/3
nonmonetary [1]   15/5
normal [1]   31/1
NORTH [6]   1/1 1/6 12/10 16/20 17/3 34/4
not [45]
note [4]   10/18 18/19 20/5 24/10
notes [2]   9/14 18/17
nothing [1]   28/16
nothing -- I [1]   28/16
notice [8]   17/18 20/9 24/14 24/24 25/2
  25/2 25/4 30/20
notices [2]   10/20 24/18
November [1]   24/15
now [9]   4/16 5/2 8/24 10/20 14/23 18/1
  28/13 29/18 33/4
number [6]   13/22 15/5 17/20 19/7 30/24
  31/6
numbers [4]   6/20 19/13 19/25 32/23

## O

object [1]   15/9
objected [1]   10/21
objection [1]   24/13
objections [2]   24/14 24/15
obligation [2]   15/7 28/2
obligations [6]   2/12 5/25 6/1 13/18 13/21
  27/20
obtain [1]   18/5
obtained [2]   12/19 13/5
obvious [1]   4/3

**O**

**odd [1]**  29/22
**odds [1]**  23/17
**off [1]**  18/15
**offer [1]**  10/7
**often [2]**  8/22 8/22
**oh [1]**  9/20
**okay [11]**  2/3 3/9 6/16 16/17 18/9 23/10
  24/9 24/20 25/6 29/14 33/9
**on [40]**
**once [1]**  13/1
**one [32]**  2/20 3/13 3/24 4/14 8/9 8/17
  8/19 8/25 10/18 10/21 11/21 11/23 12/11
  13/5 13/23 15/18 16/14 16/19 16/21 17/16
  22/12 23/11 25/10 30/1 30/2 30/7 30/24
  31/10 31/16 31/21 31/22 32/20
**one-third [3]**  2/20 8/19 25/10
**ones [2]**  5/8 11/7
**ongoing [1]**  15/7
**only [7]**  4/7 5/16 15/25 18/4 23/21 26/14
  27/15
**operating [1]**  18/22
**opposed [1]**  9/15
**opt [1]**  30/2
**opt-out [1]**  30/2
**option [1]**  22/20
**or [29]**  2/8 4/8 4/19 7/11 7/14 8/17 8/25
  9/1 9/1 11/4 11/8 11/14 12/7 13/25 14/5
  14/17 15/16 18/23 19/12 20/12 23/1 23/14
  24/23 27/25 28/22 29/11 29/24 33/1
**order [9]**  4/5 15/22 17/2 17/5 28/23 29/18
  30/11 30/21 33/6
**ordered [2]**  17/3 32/3
**orderly [1]**  14/8
**ordinary [1]**  23/20
**other [11]**  2/15 2/19 9/1 10/18 15/5 15/25
  16/3 21/17 22/2 27/8 28/22
**others [4]**  1/3 8/23 20/25 27/4
**Otherwise [1]**  32/14
**our [6]**  5/5 15/18 17/17 22/6 31/8 31/9
**out [27]**  2/23 3/13 4/25 6/25 9/15 10/20
  12/9 12/17 14/6 15/18 18/6 19/15 21/14
  21/22 23/8 23/21 24/3 24/22 26/11 26/12
  27/5 29/5 29/18 29/20 30/2 32/13 32/16
**outside [1]**  25/20
**over [3]**  4/13 4/18 16/8
**overall [1]**  25/3
**oversight [1]**  29/1

**P**

**pages [1]**  29/22
**paid [2]**  23/13 23/18
**papers [1]**  7/7
**part [8]**  6/16 9/10 15/8 16/8 23/25 24/2
  28/18 32/12
**participate [1]**  32/3
**particularly [3]**  22/11 22/16 31/11
**parties [2]**  13/19 31/8
**partner [1]**  15/18
**partners [1]**  20/25
**party [2]**  14/3 16/23
**passed [1]**  14/6
**patient [16]**  1/14 3/11 13/4 19/16 19/19
  19/23 20/5 20/7 20/9 21/12 22/12 22/24
  24/18 25/9 25/23 26/11
**patients [1]**  14/21
**PATRICK [3]**  1/18 3/16 4/17
**pause [1]**  7/9
**pay [2]**  23/23 33/8

**payment [3]**  14/25 22/20 31/10
**pens [1]**  3/13
**people [5]**  21/22 22/13 22/16 22/25 23/12
**per [3]**  19/5 22/4 24/6
**percent [9]**  6/10 8/4 8/12 23/21 23/22
  24/22 24/24 25/3 26/9
**percentage [1]**  8/5
**perfect [1]**  12/25
**performance [1]**  17/4
**person [2]**  22/4 24/6
**perspective [1]**  4/10
**physician [25]**  1/17 2/15 3/16 6/1 9/5 9/6
  11/10 13/4 14/15 14/25 16/9 18/11 18/24
  19/6 19/17 19/20 19/24 20/5 21/15 24/11
  25/23 26/6 26/9 27/17 32/1
**physicians [1]**  11/11
**pick [1]**  6/17
**piece [1]**  3/3
**place [2]**  12/8 28/22
**places [2]**  27/6 27/7
**plaintiff [2]**  3/7 17/5
**plaintiffs [2]**  1/5 16/21
**plaintiffs' [1]**  4/13
**plan [1]**  4/18
**play [1]**  5/16
**pleadings [1]**  17/17
**pleased [1]**  25/4
**pocket [4]**  21/14 23/8 23/21 24/3
**point [8]**  7/6 9/15 11/15 12/6 15/14 16/2
  26/19 26/20
**pointed [1]**  27/5
**points [1]**  30/23
**policies [7]**  4/25 5/9 5/17 11/16 11/23
  27/16 29/13
**policy [4]**  6/17 10/5 29/9 32/6
**portion [1]**  7/12
**position [5]**  4/20 5/5 10/23 15/11 17/14
**positive [1]**  29/1
**possible [3]**  18/17 32/15 32/16
**postcards [1]**  20/12
**pot [3]**  7/19 7/20 22/3
**potentially [1]**  14/7
**practice [1]**  31/1
**practices [3]**  14/15 14/22 14/23
**practitioners [1]**  31/1
**pre [1]**  18/22
**pre-bankruptcy [1]**  18/22
**precise [1]**  18/15
**precision [1]**  18/14
**prejudice [1]**  8/11
**preliminary [2]**  4/6 11/22
**preparation [1]**  13/7
**prepared [1]**  13/9
**pres [2]**  22/10 23/5
**pretty [6]**  4/5 17/13 24/25 25/6 30/1
  32/11
**prevalent [1]**  22/21
**primarily [1]**  25/8
**primary [1]**  4/23
**pro [5]**  22/14 23/9 23/18 24/5 28/16
**probably [6]**  2/14 3/2 3/25 4/3 28/1 33/6
**problem [6]**  6/24 10/25 11/2 16/9 29/17
  30/6
**problems [4]**  2/11 3/25 6/14 30/9
**proceed [2]**  14/8 15/10
**proceedings [1]**  1/11 1/24 34/6
**proceeds [10]**  5/9 5/19 7/10 7/14 7/20
  7/21 16/7 17/1 17/2 17/18
**process [5]**  21/5 21/11 21/14 24/15 30/20

## P

**produced [1]** 1/25
**professionalism [3]** 31/14 31/20 32/18
**propose [2]** 21/22 27/21
**proposed [1]** 24/16
**protect [3]** 13/3 14/11 17/10
**protective [1]** 17/7
**protects [1]** 8/12
**proud [1]** 12/19
**provide [4]** 14/16 15/15 19/11 19/13
**provided [2]** 5/20 7/24
**provides [1]** 10/4
**provision [1]** 6/9
**provisions [2]** 15/5 16/15
**pulled [1]** 12/9
**purchase [1]** 13/16
**purposes [1]** 28/10
**pursue [1]** 5/19
**pursuing [1]** 5/25

## Q

**question [7]** 2/14 5/1 12/15 16/18 18/10 24/17 27/25
**questions [15]** 2/9 3/17 4/4 4/15 4/18 4/22 5/4 10/24 16/3 21/17 23/11 25/7 26/24 26/25 30/25
**quick [1]** 30/23
**quickly [4]** 25/25 29/18 32/12 32/17
**quite [2]** 4/11 22/20

## R

**range [1]** 24/6
**rata [5]** 22/14 23/9 23/18 24/5 28/16
**rate [4]** 25/3 26/13 26/14 26/15
**rates [1]** 30/8
**rather [1]** 7/13
**reach [5]** 2/18 24/24 25/3 27/21 32/4
**reached [2]** 28/3 31/9
**read [4]** 4/3 4/5 4/11 29/12
**reading [1]** 29/10
**real [4]** 3/3 15/25 16/4 27/15
**realize [1]** 11/3
**realized [1]** 11/4
**really [16]** 4/9 5/21 5/21 5/22 6/24 10/23 10/25 13/10 14/6 15/24 28/16 29/5 29/12 29/25 30/4 31/1
**reason [4]** 5/6 5/16 13/15 16/10
**reasonable [10]** 9/2 9/7 9/8 9/10 20/6 28/4 29/3 30/3 30/7 33/7
**receive [4]** 15/4 15/5 18/12 23/12
**received [1]** 15/3
**receivership [1]** 20/24
**receives [1]** 7/14
**recently [1]** 30/8
**recipients [1]** 17/2
**recognizing [1]** 31/22
**recommendation [1]** 22/11
**record [5]** 3/6 17/17 19/10 30/15 31/7
**records [3]** 14/17 15/8 20/22
**recovery [3]** 10/4 10/21 17/9
**reduced [1]** 7/20
**refer [1]** 21/25
**reflect [1]** 30/15
**rehabilitation [1]** 16/20
**rejected [2]** 5/10 8/8
**related [1]** 16/22
**relationship [1]** 25/19
**relationships [1]** 23/1
**release [1]** 14/4

**relief [3]** 15/6 18/4 28/23
**remainder [2]** 23/8 23/19
**remember [1]** 26/5
**remise [2]** 31/6 31/13
**remote [2]** 11/20 11/21
**reported [3]** 1/24 32/23 33/7
**reporter [4]** 1/22 1/24 34/3 34/11
**represent [1]** 13/10
**representative [1]** 13/4
**representatives [4]** 10/8 11/12 13/5 29/2
**representing [2]** 5/24 31/8
**request [3]** 10/14 19/12 22/20
**requested [5]** 19/8 22/13 25/10 26/8 26/9
**requesting [1]** 26/6
**require [4]** 5/1 5/6 8/3 27/20
**required [2]** 13/22 18/7
**requirements [1]** 30/18
**requires [1]** 16/24
**resolution [1]** 14/2
**resolve [1]** 7/6
**resolved [1]** 11/16
**respect [1]** 4/19
**responsible [2]** 11/12 29/2
**rest [1]** 4/21
**restraining [1]** 17/4
**result [2]** 9/8 15/21
**resulted [1]** 16/23
**results [4]** 12/19 17/25 19/5 19/21
**retain [4]** 5/3 6/9 11/7 28/9
**retire [1]** 12/4
**right [14]** 5/24 6/2 6/6 10/1 11/9 15/4 15/16 17/15 20/8 20/18 21/3 21/8 26/21 29/15
**rightful [1]** 5/19
**rights [8]** 5/9 5/17 5/25 6/22 14/11 14/23 15/13 15/23
**rise [1]** 14/20
**risk [1]** 16/9
**road [1]** 28/13
**Rothchild [4]** 1/20 3/22 31/15 32/5
**rough [1]** 18/14
**round [2]** 21/22 22/9
**RPR [3]** 1/22 34/3 34/11
**rule [2]** 29/10 30/18
**rules [1]** 9/24
**run [2]** 3/13 28/19
**Russ [1]** 3/14

## S

**said [3]** 4/6 7/16 25/10
**sale [5]** 15/10 15/22 17/18 17/20 17/25
**same [3]** 4/6 29/13 31/16
**Saves [2]** 22/22 22/23
**say [8]** 9/24 11/1 13/2 26/1 30/24 31/6 31/13 33/6
**saying [2]** 7/8 9/5
**says [1]** 28/15
**scheduling [1]** 32/19
**seat [1]** 25/17
**seats [2]** 13/5 25/23
**second [2]** 17/16 21/22
**secondary [1]** 23/4
**secure [2]** 15/22 25/17
**secured [3]** 13/6 13/11 17/22
**see [3]** 7/8 21/17 25/6
**seek [1]** 28/23
**seem [1]** 29/2
**seemed [1]** 30/6
**seems [3]** 2/22 4/11 10/9

**S**

seen **[4]** 29/23 30/2 31/18 33/4
sell **[1]** 29/5
send **[1]** 21/22
sense **[2]** 22/4 22/7
sent **[2]** 2/8 10/20
separate **[2]** 5/6 25/12
separately **[1]** 19/8
service **[1]** 19/1
services **[3]** 14/17 14/17 14/18
session **[1]** 2/2
settle **[6]** 6/5 6/19 8/15 8/21 10/9 32/11
settled **[1]** 11/4
settlement **[76]**
settlements **[4]** 9/25 22/2 23/20 32/25
settles **[1]** 8/24
seven **[1]** 29/24
share **[2]** 22/14 23/9
shoes **[1]** 5/18
should **[4]** 3/1 5/20 7/14 13/21
side **[2]** 22/12 31/16
similar **[1]** 26/18
similarly **[1]** 1/4
simplifies **[1]** 12/3
since **[6]** 18/19 18/20 22/12 22/16 24/13 24/14
sitting **[1]** 31/7
situated **[1]** 1/4
six **[2]** 24/21 29/24
size **[1]** 20/7
Slow **[3]** 13/8 14/19 19/25
small **[1]** 23/3
smoothly **[1]** 31/20
so **[69]**
software **[1]** 14/17
some **[13]** 4/21 11/11 12/7 16/10 18/6 19/7 20/20 24/6 25/22 27/25 28/22 29/8 29/22
somebody **[3]** 3/1 11/23 33/8
something **[4]** 9/9 12/18 29/3 33/6
somewhere **[1]** 3/1
soon **[2]** 32/15 32/16
sort **[1]** 3/2
sounds **[1]** 28/5
SPAUGH **[3]** 1/18 3/16 4/17
speak **[2]** 20/15 21/13
specific **[6]** 4/20 10/4 13/1 17/3 19/13 21/25
spent **[1]** 30/16
squirrely **[1]** 13/14
stage **[1]** 32/13
standard **[1]** 30/20
standing **[1]** 5/18
start **[2]** 4/14 4/23
started **[2]** 21/5 32/25
state **[3]** 3/24 16/20 29/9
STATES **[4]** 1/1 1/12 34/3 34/11
stay **[1]** 25/25
stenotype **[1]** 1/24
step **[2]** 13/12 14/13
still **[14]** 2/16 2/17 2/23 4/11 5/25 7/12 9/24 10/8 15/1 16/15 23/23 27/3 27/6 28/6
Street **[1]** 34/12
subject **[2]** 17/21 27/18
submission **[1]** 18/16
submissions **[1]** 24/14
submits **[1]** 19/6
submitted **[2]** 5/10 18/18
subsumed **[1]** 6/11
sue **[4]** 7/4 8/17 8/17 8/17

superior **[1]** 17/3
supplement **[2]** 19/11 25/2
supplemental **[1]** 32/21
supplemented **[1]** 25/1
support **[1]** 10/22
supposed **[1]** 29/4
sure **[13]** 2/11 2/13 3/3 11/22 17/9 26/12 27/19 28/2 29/3 29/8 29/20 30/17 31/4
surprised **[1]** 12/21
SUTTON **[1]** 1/14

**T**

take **[5]** 9/23 10/6 12/6 17/18 23/12
taken **[1]** 27/8
taking **[1]** 15/10
talk **[2]** 12/18 27/16
technical **[1]** 3/4
tell **[5]** 4/15 26/22 27/21 27/24 30/22
telling **[2]** 20/25 27/18
temporary **[1]** 17/4
ten **[1]** 29/24
terminate **[1]** 15/4
termination **[1]** 15/16
terms **[2]** 10/18 11/7
than **[8]** 7/5 7/13 8/23 23/2 23/17 26/11 26/15 30/4
thank **[6]** 24/9 27/14 30/24 31/4 31/24 33/10
that **[219]**
that -- if **[1]** 8/23
that -- well **[1]** 7/16
that's **[35]**
their **[8]** 5/10 8/14 13/5 14/11 15/3 16/19 23/2 31/21
them **[25]** 2/5 4/19 6/18 6/19 6/25 7/4 8/7 8/9 8/13 8/17 8/25 9/1 16/25 20/19 20/21 21/23 22/19 28/14 29/5 29/14 29/24 32/23 33/3 33/4 33/7
themselves **[2]** 3/5 17/9
then **[17]** 3/1 4/20 7/25 8/10 12/5 12/6 14/6 14/7 16/9 17/4 18/18 22/4 22/9 23/18 23/23 25/1 27/25
there **[37]**
therein **[1]** 15/6
these **[11]** 2/10 2/15 5/7 13/3 13/21 14/9 14/15 14/16 14/16 29/1 32/25
they **[47]**
they've **[2]** 6/18 33/2
thing **[5]** 4/6 8/17 10/18 18/23 29/14
things **[3]** 12/3 13/14 32/19
think **[47]**
third **[6]** 2/20 6/24 7/5 8/19 25/10 28/15
thirty **[1]** 29/22
this **[45]**
THOMAS **[1]** 1/18
those **[30]** 2/19 2/24 4/3 5/2 5/3 5/9 5/15 5/17 5/25 11/15 11/23 14/18 14/21 14/23 15/23 15/25 16/4 17/2 17/21 18/21 21/1 21/7 23/8 23/17 23/22 23/23 24/3 27/22 28/3 33/5
though **[3]** 7/6 10/14 18/1
three **[1]** 33/1
through **[9]** 8/10 14/24 21/9 21/24 22/17 22/18 25/7 31/17 31/19
Thursday **[1]** 29/19
tied **[1]** 27/3
time **[5]** 12/17 22/14 29/14 30/17 31/3
timeline **[1]** 18/22
times **[1]** 15/19

**T**

today **[2]** 24/8 24/14
today's **[1]** 4/23
together **[1]** 31/15
tomorrow **[1]** 12/5
too **[1]** 32/16
took **[3]** 11/1 13/2 16/11
top **[3]** 8/1 9/15 26/8
topline **[1]** 17/20
total **[3]** 19/14 19/18 19/21
touch **[1]** 3/25
towards **[1]** 15/3
transcript **[4]** 1/11 1/25 33/8 34/5
transcription **[1]** 1/25
transfer **[2]** 15/23 20/15
transfer -- well **[1]** 20/15
transferred **[1]** 16/25
trend **[1]** 23/20
trial **[1]** 7/7
tried **[2]** 8/8 32/12
true **[1]** 34/5
try **[5]** 13/2 27/23 29/18 29/21 32/12
trying **[10]** 9/17 10/14 17/8 22/9 25/21 31/10 31/15 31/16 31/16 32/10
trying -- what **[1]** 10/14
turn **[1]** 4/13
two **[9]** 2/15 2/19 4/25 11/16 27/16 27/22 29/19 30/23 31/6
type **[2]** 8/6 13/1
typically **[1]** 23/21

**U**

ultimate **[3]** 10/15 14/13 18/16
ultimately **[7]** 9/21 10/12 10/12 14/7 14/10 15/21 21/19
unanticipated **[1]** 12/18
uncashed **[3]** 21/18 21/21 22/2
uncomfortable **[1]** 28/25
undeliverable **[1]** 24/23
under **[7]** 5/9 5/17 13/18 15/1 15/13 16/8 18/22
underinsured **[1]** 29/11
underlying **[3]** 14/14 14/16 16/21
understand **[4]** 7/9 26/3 30/17 30/25
understand -- I **[1]** 30/25
understanding **[6]** 2/13 16/6 16/23 16/24 21/20 28/20
understood **[1]** 26/25
unfortunate **[1]** 14/6
uninsured **[1]** 29/11
UNITED **[4]** 1/1 1/12 34/3 34/11
unknown **[1]** 7/3
unknowns **[1]** 28/21
unless **[1]** 10/24
unsecured **[4]** 18/3 18/5 25/17 25/24
untenable **[1]** 17/13
until **[4]** 11/3 11/19 12/4 13/24
up **[11]** 6/5 6/20 8/7 10/16 10/17 12/4 12/7 17/13 21/16 27/3 28/21
us **[23]** 3/23 7/17 8/13 9/17 9/17 9/19 10/13 12/17 13/22 22/5 23/17 24/8 25/14 25/20 25/21 25/22 25/25 30/24 31/1 31/3 31/7 31/15 32/4
USA **[1]** 1/19
use **[1]** 23/22
using **[1]** 25/14

**V**

vacation **[1]** 29/19

valid **[4]** 19/6 21/10 23/22 24/4
various **[1]** 20/24
Vegas **[2]** 23/17
Venmo **[1]** 23/2
verdict **[2]** 8/18 28/14
verification **[1]** 21/14
very **[7]** 5/4 22/25 25/4 29/2 29/2 30/3 30/7
via **[1]** 20/9
view **[2]** 2/12 29/13
vigorously **[1]** 13/22
vision **[1]** 32/1
voice **[1]** 31/16

**W**

wait **[1]** 11/1
want **[19]** 2/11 2/22 4/2 4/16 9/15 17/10 17/15 26/3 26/22 27/15 27/18 27/23 27/24 28/19 29/8 30/15 30/22 30/24 33/8
wanted **[3]** 13/15 13/17 31/23
warranted **[1]** 20/6
was **[36]**
wasn't **[3]** 16/7 16/10 20/11
wasting **[1]** 32/6
way **[7]** 9/19 10/13 18/13 20/20 26/1 27/19 33/2
ways **[1]** 13/23
we **[73]**
we're **[5]** 2/3 8/6 10/13 13/19 24/6
we've **[4]** 16/5 22/1 26/23 31/14
week **[2]** 11/3 30/8
weeks **[2]** 29/19 32/14
well **[9]** 6/20 7/16 12/3 13/2 15/9 20/15 21/12 22/25 29/16
well-appreciated **[1]** 22/25
went **[4]** 24/22 25/16 31/19 32/10
were **[22]** 12/12 12/21 15/9 15/21 16/9 18/22 19/1 20/11 20/13 20/19 20/20 23/13 23/17 24/4 24/4 24/22 25/4 25/8 25/16 25/19 29/12 33/7
what **[28]** 2/5 5/2 6/7 7/8 7/19 8/21 8/22 8/24 9/3 9/4 9/10 10/14 14/20 15/9 17/24 19/20 22/1 22/10 23/12 26/6 26/13 26/20 26/22 27/17 27/17 28/15 30/15 31/22
what -- I **[1]** 26/13
What's **[1]** 2/17
whatever **[3]** 6/25 9/20 25/11
whatsoever **[1]** 7/20
when **[9]** 2/23 12/21 15/2 21/5 29/9 30/13 31/3 31/9 32/25
whenever **[1]** 11/4
where **[14]** 6/4 8/16 11/16 11/25 12/1 12/11 12/12 13/14 14/4 17/5 22/6 22/7 28/11 28/18
whereas **[1]** 21/15
whether **[1]** 13/25
which **[12]** 8/10 12/4 14/10 20/20 22/13 22/20 22/24 23/14 25/8 30/11 32/2 32/4
while **[2]** 7/10 20/24
WHITE **[2]** 1/16 3/8
who **[16]** 3/1 3/16 6/21 10/6 10/9 11/7 11/7 11/12 11/22 15/14 17/22 19/6 20/21 20/25 21/22 25/20
why **[9]** 10/19 11/1 12/25 13/21 17/7 18/7 20/18 21/4 30/11
will **[14]** 7/20 11/24 13/25 16/14 16/15 18/19 21/19 22/19 23/3 23/12 28/6 28/9 30/20 32/14
Winchester **[1]** 2/8

**W**

**within [4]**  6/13 6/13 8/3 14/12
**without [3]**  6/6 7/7 8/11
**witnesses [1]**  15/21
**Womble [4]**  1/19 3/15 4/17 31/14
**wondering [1]**  8/16
**word [1]**  11/15
**work [6]**  6/25 8/13 18/6 19/11 21/10 21/24
**worked [3]**  12/17 13/3 13/5
**working [1]**  31/15
**works [1]**  22/5
**worry [1]**  27/11
**worth [1]**  22/9
**would [47]**
**write [2]**  8/7 26/5
**wrong [1]**  12/8

**Y**

**yeah [2]**  17/10 23/15
**year [2]**  11/4 15/2
**years [2]**  7/1 29/25
**yes [13]**  3/21 13/9 16/13 22/1 24/21 26/1
  26/7 26/18 27/7 27/10 28/8 28/12 30/23
**York [1]**  15/19
**you [117]**
**you -- I [1]**  27/24
**you -- it [1]**  8/21
**you'll [2]**  4/14 32/14
**you're [3]**  7/5 14/3 29/6
**you've [1]**  4/18
**you-all [2]**  30/10 32/22
**you-all's [2]**  26/10 32/18
**your [42]**

**Z**

**zealous [1]**  31/21
**zero [1]**  22/7
**zillion [1]**  7/1